**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 17 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

BRUCE OLIVER,

      Plaintiff-Appellee,

v.

JAMES WOODS; DALE SCOW,

      Defendants-Appellants,

CITY OF CENTERVILLE; CITY OF
FARMINGTON,

      Defendants.

No. 98-4179

---

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 97-CV-106-K)**

---

Bernard L. Allen of Richards, Caine & Allen, P.C., Ogden, Utah, for Plaintiff-
Appellee.

Karra J. Porter (Veda M. Travis with her on the briefs) of Christensen & Jensen,
P.C., and Allan L. Larson (Harry H. Souvall with him on the briefs) of Snow,
Christensen & Martineau, Salt Lake City, Utah, for Defendants-Appellants.

---

Before **TACHA, BRORBY** and **EBEL**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

Bruce Oliver, Plaintiff-Appellee, triggered a silent alarm when he drove into the parking lot of an auto repair shop in order to drop off his car before business hours. Mr. Oliver refused to present identification to a police officer who approached him in the parking lot, and was subsequently arrested for refusing to identify himself. Mr. Oliver initiated a 42 U.S.C. § 1983 suit against Officers James Woods and Dale Scow, Defendants-Appellants, alleging the officers stopped him without reasonable suspicion, in violation of the Fourth Amendment to the United States Constitution and Utah Code Ann. § 77-7-15. The district court determined Officers Woods and Scow were not entitled to qualified immunity, and entered partial summary judgment in favor of Mr. Oliver. Officers Woods and Scow now appeal the district court's denial of qualified immunity. We exercise jurisdiction under 28 U.S.C. § 1291, and reverse.

I. Facts

Plaintiff Bruce Oliver, a criminal defense attorney, delivered his MG to Dave's Import Auto Shop ("Dave's") for servicing at approximately 6:45 a.m. on September 25, 1995, as prearranged with Dave's. Mr. Oliver's seventeen-year-old son, Michael, followed Mr. Oliver in the family's Chrysler. Before reaching Dave's, Mr. Oliver pulled over near an intersection to wait for his son to catch up with him. As Michael arrived, both father and son saw Centerville Police Officer

2

James Woods follow them to Dave's, where Mr. Oliver parked his MG in the parking lot in front of the shop and got into the driver's seat of the waiting Chrysler.

Unbeknownst to Mr. Oliver, Dave's had been experiencing problems with illegal oil dumping. On two previous occasions someone had placed approximately five gallons of oil in a plastic bag in Dave's parking lot during the night. As a result, the Centerville Police Department installed a special silent alarm, called a "varda" alarm, which signaled the Centerville Police anytime an infrared beam across the driveway into Dave's was broken. Centerville Police Officer James Woods was aware of the problems at Dave's, and received notice the alarm had been tripped at 6:50 a.m. It was near dawn, but still somewhat dark at that time. Farmington Police Officer Dale Scow also received notice the alarm had been activated, and, because it was standard procedure for a backup officer to respond, drove toward Dave's.

Officer Woods approached Mr. Oliver as he sat in the Chrysler preparing to drive home and asked Mr. Oliver for his name and proof of identification. Mr. Oliver refused to identify himself. Mr. Oliver explained he was there to drop off his car and asked if it was a crime to park a vehicle or if he had broken the law.

3

Officer Woods replied it was not a violation of the law to park a vehicle, and again asked for identification. [1] Mr. Oliver refused to identify himself, quoting Utah Code Ann. § 77-7-15, which provides:

> A peace officer may stop any person in a public place when he has a reasonable suspicion to believe he has committed or is in the act of committing or is attempting to commit a public offense and may demand his name, address and an explanation of his actions.

Mr. Oliver then told Officer Woods to step aside because he was leaving. Officer Woods told Mr. Oliver he was not free to leave. Mr. Oliver drove out of the parking lot. Officer Woods returned to his patrol car, called for backup, and drove after Mr. Oliver.

Officer Scow was already en route to Dave's when he was notified by the dispatcher that the suspect had left the scene and Officer Woods had called for backup. Coming from the opposite direction, Officer Scow soon encountered the caravan. Officer Scow turned his car around and followed behind Officer Woods. Officer Woods turned on his lights, and Mr. Oliver pulled over to the side of the highway. Before approaching Mr. Oliver, Officer Woods told Officer

---

[1] At his deposition, Officer Woods testified he told Mr. Oliver he was investigating an alarm. Mr. Oliver testified Officer Woods did not mention the alarm. Mr. Oliver testified Officer Woods told him he had not violated any law, but that Utah law required Mr. Oliver to identify himself.

Scow he had responded to a "varda" alarm and found this vehicle in the parking lot, but the driver refused to identify himself and drove away. Officers Woods and Scow then approached Mr. Oliver and spoke briefly to him. The officers then compelled Mr. Oliver to exit the car and, when he did not respond to the officers' order to fall to his knees quickly enough, he was forced to his knees. Mr. Oliver asked what law he had broken, and the officers replied he had failed to identify himself. Mr. Oliver once again cited Utah Code Ann. § 77-7-15, and insisted he did not have to present identification. [2] Mr. Oliver was handcuffed,

---

[2] Although there is some disparity in the deposition testimony as to exactly what happened when Mr. Oliver was stopped on the highway, a video camera in Officer Scow's patrol car captured the following events. The officers walked directly to the car and immediately opened the door, without pausing or talking to Mr. Oliver first. Once the officers opened the door, they talked to Mr. Oliver for about a minute, and then reached into the car to forcibly remove him. As the officers were attempting to remove Mr. Oliver from the car, Mr. Oliver said: "Don't, don't, don't. Get your hands off me. Get your hands off me." The officers told Mr. Oliver to get out of the car. Mr. Oliver again told the officers to get their hands off him, and got out of the car very quickly. The officers stepped back and took out their mace canisters. Mr. Oliver then said: "Draw your guns for hell's sake. Shoot me. I don't care." The officers ordered Mr. Oliver to turn around and put his hands on his head. Mr. Oliver placed his hands on his head as directed. The officers commanded Mr. Oliver to drop to his knees. Mr. Oliver immediately bent forward to do so, but, apparently because his hands were on his head, paused to gain his balance. The officers immediately forced him to the ground. They told Mr. Oliver to relax. Mr. Oliver responded: "I can't relax with two ass holes pushing me around like that. What law did I break?" When told he had failed to give an officer identification, Mr. Oliver explained to them that he was not required to give identification unless he had broken the law, and cited Utah Stat. Ann. § 77-7-15. The officers told him that he did have to give identification and asked why he did not identify himself. Mr. Oliver strongly insisted he did not have to identify himself and cited Utah Stat. Ann. § 77-7-15

5

guided back to Officer Scow's patrol car, and arrested. At that point, the following dialogue between Officers Woods and Scow took place:

> Officer Woods: He asked if he'd broken any laws by dropping off his vehicle, and I told him no.
>
> Officer Scow: He didn't, but he still has to identify himself.
>
> Officer Woods: What code is that?
>
> Officer Scow: I don't know exactly what code it is, to tell you the truth.

Officer Woods then explained: "This guy was driving because they dropped off two vehicles. So he was driving this car. He's gotta learn...."

Officer Scow drove Mr. Oliver to the Davis County Jail [3] where he was charged with violating Utah Code Ann. § 77-7-15. Learning no criminal sanctions were authorized for violating § 77-7-15, the prosecutor amended the

once again. Utah Highway Patrol Trooper Eric McPherson then arrived on the scene.

---

[3] While transporting Mr. Oliver to the police station, Officer Scow had a conversation with Mr. Oliver. Mr. Oliver's statements are not audible on the video tape, but Officer Scow explained, apparently in response to Mr. Oliver's questions, that Centerville City set up an alarm at Dave's Auto Imports because they were "having problems there." Officer Scow further explained he did not work for Centerville City. Mr. Oliver asked two questions to which Officer Scow responded "I don't know." Officer Scow then stated: "All you have to do is identify yourself and tell him what's going on." Mr. Oliver made some response to that statement, and Officer Scow stated: "Well, you have now."

6

charge to violation of Motor Vehicle Code 41a-214, failing to display motor vehicle registration. A Justice of the Peace dismissed the case, finding the officers lacked reasonable suspicion that Mr. Oliver violated the law.

Mr. Oliver subsequently brought suit pursuant to 42 U.S.C. § 1983 against Officer Woods and his employer, the City of Centerville, and Officer Scow and his employer, the City of Farmington. [4] Mr. Oliver claimed he was subjected to an illegal seizure in violation of the Fourth Amendment to the United States Constitution, Section I of the Utah Constitution, and Utah Code Ann. § 77-7-15. He also asserted various tort claims under Utah law. Officers Scow and Woods moved for summary judgment, claiming they were entitled to qualified immunity because they had not violated Mr. Oliver's clearly established constitutional rights. Mr. Oliver opposed the defendants' motion for summary judgment and filed a cross-motion for partial summary judgment on the issue of liability, asking the court to rule, based on the undisputed facts, that his arrest was unconstitutional.

---

[4] Mr. Oliver also brought suit against Highway Patrol Trooper Eric McPherson, the Utah Department of Public Safety, and the Director of the Department of Public Safety, Craig Deardon. These claims are not at issue in this appeal.

7

The district court determined Officers Woods and Scow violated Mr. Oliver's clearly established Fourth Amendment rights and were therefore not entitled to qualified immunity. The court determined Mr. Oliver's arrest violated the Fourth Amendment because Officer Woods had no reasonable suspicion of criminal activity when he detained Mr. Oliver in the parking lot, and Officer Scow was unreasonable in relying upon the information provided by Officer Woods concerning the original suspicion of criminal activity. The court granted Mr. Oliver's cross-motion for partial summary judgment, finding Officers Woods and Scow liable with respect to the § 1983 claims. The court granted the defendants' motions for summary judgment on the state law tort claims, and dismissed Mr. Oliver's claims against the municipalities. The only claims at issue in this appeal are Mr. Oliver's § 1983 claims against Officers Woods and Scow.

II. The Denial of the Officers' Motions for Summary Judgment

Officers Woods and Scow contend the district court erred by determining they violated Mr. Oliver's clearly established constitutional rights, and therefore erred by denying their motions for summary judgment based on qualified immunity.

A. Standard of Review

We review the denial of summary judgment on the grounds of qualified immunity *de novo*. *Baptiste v. J.C. Penny Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998). In general, summary judgment is appropriate when "'there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.'" *Seymore v. Shawver & Sons, Inc*., 111 F.3d 794, 797 (10th Cir.) (quoting Fed. R. Civ. P. 56(c)), *cert. denied*, 522 U.S. 935 (1997). Under the summary judgment standard, we view the evidence in the light most favorable to the nonmoving party, but that party must set forth specific facts as to those dispositive matters for which it carries the burden of proof in order to demonstrate a genuine issue for trial. *Muck v. United States*, 3 F.3d 1378, 1380 (10th Cir. 1993). However, summary judgment decisions involving a qualified immunity defense are subject to a somewhat different analysis on review than are other summary judgment rulings. *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995).

"Qualified immunity is designed to shield public officials from liability and ensure that erroneous suits do not even go to trial." *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995) (quotation marks and citations omitted). "The entitlement to qualified immunity is an immunity from suit rather than a

9

mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1026 (10th Cir. 1994) (quotation marks and citations omitted). Thus, immunity questions should be resolved as early as possible in litigation. *Albright*, 51 F.3d at 1534. When a claim of qualified immunity is raised in a defendant's motion for summary judgment, the plaintiff must show the defendant's actions violated a specific statutory or constitutional right, and "the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue." *Id*. The trial court decides as a matter of law whether the plaintiff's allegations, if true, state a claim for a violation of a clearly established constitutional right. *See Romero*, 45 F.3d at 1475. "'Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Albright*, 51 F.3d at 1535 (quoting *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)). Whether the asserted right was clearly established at the time of the conduct at issue is a question of law we review *de novo*. *Romero*, 45 F.3d at 1475. If the plaintiff fails to show the defendants violated a constitutional or statutory right, or that the asserted violation was clearly established under the law, the defendant is entitled to

qualified immunity. *See Albright*, 51 F.3d at 1535. If the trial court determines the plaintiff has "sufficiently alleged the conduct violated clearly established law, then the defendant bears the burden, as a movant for summary judgment, of showing no material issues of fact remain that would defeat the claim of qualified immunity." *Romero*, 45 F.3d at 1475 (quotation marks and citations omitted). [5]

## B. Violation of a Clearly Established Constitutional Right

The officers contend they were entitled to summary judgment based on qualified immunity because Mr. Oliver failed to show his clearly established constitutional rights were violated. Specifically, the officers argue Officer Woods had reasonable suspicion to detain Mr. Oliver in order to investigate possible criminal activity. They further argue Officer Woods' reasonable suspicion of criminal activity ripened into probable cause to believe Mr. Oliver

---

[5] In their notice of appeal, Officers Woods and Scow indicate their intent to appeal the "District Court's order dated September 28, 1998, and entered September 29, 1998, denying these defendants qualified immunity." In their opening brief, Officers Woods and Scow only address the denial of their motions for summary judgment, arguing it was improper because they were entitled to qualified immunity. Thus, we do not address the officers' argument, contained in their reply brief, that the court improperly granted Mr. Oliver's motion for partial summary judgment on the issue of their liability for the § 1983 claims. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (failure to raise an issue in the opening brief waives the issue). However, the reversal of the district court's determination of qualified immunity protects Officers Woods and Scow from liability on the § 1983 claims.

violated Utah law when he refused to identify himself and left the parking lot.

### 1. The Initial Investigative Detention

We first determine whether Officer Woods violated Mr. Oliver's clearly established constitutional rights when he initially detained Mr. Oliver in Dave's parking lot.

The Fourth Amendment to the Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. The Supreme Court has identified three types of police/citizen encounters: consensual encounters, investigative stops, and arrests. *See United States v. Cooper*, 733 F.2d 1360, 1363 (10th Cir.), *cert. denied*, 467 U.S. 1255 (1984). Consensual encounters are not seizures within the meaning of the Fourth Amendment, and need not be supported by suspicion of criminal wrongdoing. *See Florida v. Royer,* 460 U.S. 491, 497-98 (1983). An officer is free to approach people and ask questions without violating the Fourth Amendment. *Id.* However, the person approached under these circumstances is free to refuse to answer questions and to end the encounter. *Id*. On the opposite extreme are arrests, which are "characterized by

12

highly intrusive or lengthy search or detention." *Cooper*, 733 F.2d at 1363. An officer may make an arrest without a warrant if the officer has probable cause to believe a crime has been committed by the arrestee. *See Romero*, 45 F.3d at 1476. "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Id.* (quotation marks and citations omitted).

An investigative detention, which is also referred to as a Terry stop, is a seizure within the meaning of the Fourth Amendment, but unlike an arrest, it need not be supported by probable cause. *See United States v. Espinosa*, 782 F.2d 888, 890 (10th Cir. 1986) (citing *Terry v. Ohio*, 392 U.S. 1 (1968)). "[T]he police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 30). Based on the totality of the circumstances, the detaining officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981). When the

13

officer has stopped a person based on reasonable suspicion of criminal activity, the officer may briefly detain the individual "in order to determine his identity or to maintain the status quo momentarily while obtaining more information." *Adams v. Williams*, 407 U.S. 143, 146 (1972). Utah Code Ann. § 77-7-15, the statute which Mr. Oliver was originally arrested for violating, codifies the requirements for an investigative detention.

The officers contend the following facts formed the basis of Officer Woods' reasonable articulable suspicion of criminal activity: (1) The "varda" alarm was triggered when Mr. Oliver drove into the parking lot; (2) Mr. Oliver was at Dave's before business hours, near dawn, at 6:45 a.m.; (3) The alarm was installed because there had been two instances of illegal oil dumping at Dave's; and (4) Mr. Oliver did not cooperate with Officer Woods' demand to produce identification, and left the parking lot. Mr. Oliver argues his presence and behavior in Dave's parking lot were entirely consistent with innocent behavior, and thus, could not lead to a reasonable suspicion of criminal activity.

The officers list a number of cases in support of their argument that Officer Woods reasonably suspected Mr. Oliver of criminal activity based on his presence near the activated "varda" alarm, including *United States v. Doyle*, 129

14

F.3d 1372 (10th Cir. 1997). In *Doyle*, the border patrol installed a silent alarm on a little-used dirt road that crossed the United States/Mexico border. *Id.* at 1373-74. When a border patrol agent was informed the sensor had been activated, he calculated the amount of time it would take a car to get from the point where the sensor had been triggered to his location on the only highway leading out of the area. *Id*. at 1374. The car arrived at the agent's location within the estimated time frame. *Id*. The agent noticed several other factors that contributed to his belief the car had entered the United States illegally. *Id.* The car was the kind of vehicle often used by smugglers, and the agent knew the highway was used as a corridor to smuggle narcotics and illegal aliens. *Id*. There were no other cars on the highway immediately in front of or behind the car. *Id.* While following the car, the agent called in the vehicle's license number and discovered it had not been recorded as legitimately crossing through a port of entry in the preceding seventy-two-hour time period. *Id.* It had not. *Id*. The agent also noticed a branch was caught in its trim, which was consistent with the brush-lined highway between the sensor and the officer's location. *Id*. The agent then decided he would stop the vehicle and question the driver. *Id*. This court determined the above factors led the agent to reasonably believe the car had made an illegal entry into the United States. *Id*. at 1376.

15

To counter the officers' argument that the case at bar is controlled by *Doyle*, Mr. Oliver argues this case is more similar to *Brown v. Texas*, 443 U.S. 47 (1979). In *Brown*, two police officers approached Mr. Brown in an alley in a part of town where drug transactions were known to occur. *Id.* at 48-49. The officers asked Mr. Brown to identify himself and explain what he was doing there. *Id.* When Mr. Brown angrily refused to identify himself and asserted the officers had no right to stop him, one of the officers replied that he was in a "high drug problem area." *Id*. at 49. The other officer frisked Mr. Brown, but found nothing. *Id*. When Mr. Brown continued to refuse to identify himself, the officers arrested him for violating *Texas Penal Code Ann. §38.02(a)*, which provides: "'A person commits an offense if he intentionally refuses to report or gives a false report of his name and residence address to a peace officer who has lawfully stopped him and requested the information.'" *Brown*, 443 U.S. at 49 n.1 (quoting Texas Penal Code Ann. §38.02(a), Failure to Identify as Witness). The Court held the application of the statute was in violation of Mr. Brown's Fourth Amendment rights because the officers lacked any basis for suspecting Mr. Brown of misconduct, and had stopped him only in order to ascertain his identity. *Id*. at 49, 52-53.

The facts of the present case fall somewhere in between *Brown* and *Doyle*.

16

While the activation of the alarm and the surrounding circumstances in the present case are not as compelling as the facts in *Doyle*, they certainly provide a greater basis for suspicion of criminal activity than the facts of *Brown*. Thus, under the totality of the circumstances, we cannot fault Officer Woods for approaching Mr. Oliver in order to ascertain the reason for his presence in the parking lot. Officer Woods knew the "varda" alarm had been set at the request of the owner of Dave's due to illegal oil dumping in the parking lot. The business was closed and it was near dawn when Officer Woods observed Mr. Oliver in the parking lot after the alarm was triggered. Even though Officer Woods testified at his deposition that, as he approached Mr. Oliver, he saw nothing in particular to indicate Mr. Oliver was engaged in illegal oil dumping or any other crime, and that he knew "varda" alarms were tripped by innocent people "all the time," based on the totality of the circumstances known to him, Officer Woods could have reasonably suspected Mr. Oliver was engaged in illegal activity such as trespass or oil dumping. [6] Although Mr. Oliver's actions were consistent with

---

[6] In support of their argument that Officer Woods had reasonable suspicion of criminal activity when he initially detained Mr. Oliver in the parking lot, the defendants cite a number of cases involving interior burglar alarms and cases where the individual flees a police investigation. These cases are distinguishable. Although we consider the triggering of the "varda" alarm to be one of the factors that gave rise to a reasonable suspicion of criminal activity under the totality of the circumstances, we recognize the triggering of an exterior alarm set on a business' driveway is less indicative of criminal activity than is the activation of an interior burglar alarm. We also reject the officers' comparison of this case to

17

innocent behavior, the Supreme Court in *Terry* acknowledged even ambiguous behavior, susceptible to an innocent interpretation, may give rise to a reasonable suspicion of criminal activity depending on the totality of the circumstances. *Terry*, 392 U.S. at 22-23. *See also Illinois v. Wardlow*, ___ U.S. ___, 120 S. Ct. 673 (2000) (flight from the scene of an investigation in a high crime area, although it may also be consistent with innocence, may give rise to reasonable suspicion of criminal activity sufficient to support a Terry stop). [7]

## 2. The Arrest

Having determined Officer Woods did not violate Mr. Oliver's clearly established constitutional rights when he detained Mr. Oliver in Dave's parking lot, we now turn to the constitutionality of Mr. Oliver's arrest. The officers

---

those involving flight from the police. Mr. Oliver did not flee Officer Woods. He terminated the encounter after waiting for Officer Woods to approach the car and after talking to Officer Woods.

[7] Although we hold the facts of this case give rise to a reasonable suspicion of criminal activity, we note this is a very close case. Reasonable suspicion is a constitutionally mandated prerequisite for an investigative detention, and we caution law enforcement officers not to read this opinion as giving them carte blanche to stop any individual, regardless of the circumstances, in order to demand identification. We trust officers will keep these constitutional parameters in mind when performing their duties, and will not be influenced by the desire to use the law to vindicate any perceived affronts to their authority by citizens exercising their constitutionally protected right to terminate consensual encounters with the police.

18

contend Officer Woods' suspicion of criminal activity ripened into probable cause to believe Mr. Oliver had violated Utah law when he refused to identify himself and left the parking lot. Specifically, the officers claim Officer Woods could have reasonably believed Mr. Oliver: (1) refused to present a driver's license, in violation of Utah Code Ann. § 53-3-217; (2) interfered with a public servant, in violation of Utah Code Ann. § 76-8-301(1); and (3) interfered with a lawful detention, in violation of Utah Code Ann. § 76-8-305. [8]

"When a warrantless arrest is the subject of a § 1983 action, the defendant arresting officer is entitled to immunity if a reasonable officer could have believed that probable cause existed to arrest the plaintiff." *Albright*, 51 F.3d at 1536 (quotation marks and citations omitted). As stated previously: "Probable cause exists if the facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Romero*, 45 F.3d at 1476 (quotation marks and citations omitted). "Even law enforcement officials who reasonably but mistakenly

---

[8] The officers also contend Officer Woods had probable cause to arrest Mr. Oliver pursuant to Utah Code Ann. § 77-7-15. However, that statute provides no criminal sanctions for refusing to present identification when requested by an officer, and thus, cannot be used to support the arrest.

conclude that probable cause is present are entitled to immunity." *Id.* (quotation marks and citations omitted).

Utah Code Ann. § 76-8-305 provides:

A person is guilty of a class B misdemeanor if he has knowledge, or by the exercise of reasonable care should have knowledge, that a peace officer is seeking to effect a lawful arrest or detention of that person or another and interferes with the arrest or detention by:

(1) use of force or any weapon;

(2) the arrested person's refusal to perform any act required by lawful order:

(a) necessary to effect the arrest or detention; and

(b) made by a peace officer involved in the arrest or detention; or

(3) the arrested person's or another person's refusal to refrain from performing any act that would impede the arrest or detention.

This section plainly applies to interference with a lawful detention. Officer Woods made it clear Mr. Oliver was being detained in the parking lot. As discussed previously, this detention was lawful because it was based on reasonable suspicion of criminal activity. Section 76-8-305 does not require the use of force; mere refusal to perform any act required by a lawful order necessary to effect the detention is sufficient to constitute a violation of § 76-8-305. Moreover, an individual who merely refuses to refrain from performing any act

20

that would impede the arrest or detention violates this section. Mr. Oliver's actions in the parking lot and on the highway fit the statute's definition of interference with an officer seeking to effect a lawful detention.

Furthermore, we conclude the orders Officer Woods gave Mr. Oliver were lawful and in furtherance of the detention. When an officer is conducting a lawful investigative detention based on reasonable suspicion of criminal activity, the officer may ask for identification and for an explanation of the suspect's presence in the area. *See Adams*, 407 U.S. at 146. *See also United States v. Walker*, 933 F.2d 812, 816 (10th Cir. 1991) (officers may ask for a driver's license during a lawful routine traffic stop), *cert. denied*, 502 U.S. 1093 (1992). The officer is also permitted to detain the individual until the investigation is completed. *See United States v. Trimble*, 986 F.2d 394, 397-98 (10th Cir.) (where a passenger in a car lawfully stopped by the police attempted to leave the area over the objection of the police officer, this court held "when [the passenger] proceeded to leave the scene of the stop, [the officer] was entitled to detain him for purposes of identification in order to ascertain 'what's going on.' Such action was in keeping with good police work, and the intrusion was minimal." (citation omitted)), *cert. denied*, 508 U.S. 965 (1993). Thus, Officer Woods gave a lawful order when he told Mr. Oliver to present identification and

21

to remain in the parking lot while he conducted the investigation. By refusing to present identification, Mr. Oliver refused to perform an act required by lawful order, necessary to effect the detention. By leaving the parking lot, Mr. Oliver performed an act that impeded the detention. Consequently, Officer Woods could have reasonably believed Mr. Oliver violated Utah Code. Ann. § 76-8-305(2), and (3). [9] Thus, Officer Woods did not violate Mr. Oliver's Fourth Amendment rights by placing him under arrest. [10]

---

[9] Because we determine Officer Woods had probable cause to arrest Mr. Oliver for violating Utah Code Ann. § 76-8-305, we need not address whether a reasonable officer could have concluded Mr. Oliver violated Utah Code Ann. § 53-3-217 and Utah Code Ann. § 76-8-301.

[10] There is no case under Utah law dealing with a person refusing to present identification as the sole basis for a conviction under § 76-8-305. However, other courts have held a refusal to present identification during an investigative detention supported by reasonable suspicion of criminal activity constitutes an independent illegal act sufficient to support a conviction for obstruction under similar statutes. *See* 66 A.L.R. 5th 397 §16(a) (1999) (listing cases). In *Albright*, the plaintiff was arrested by a border patrol agent when he refused to present identification after the plaintiff had been lawfully stopped. 51 F.3d at 1536-38. We determined the initial Terry stop was founded upon reasonable suspicion of criminal activity, and the arresting border patrol agent was entitled to qualified immunity because the agent "could have reasonably concluded Plaintiff concealed his identity 'with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer or any other person in a legal performance of his duty'" in violation of N.M. Stat. Ann. § 30-22-3. *Albright*, 51 F.3d at 1537. Although the New Mexico statute analyzed in *Albright* more clearly criminalized the plaintiff's refusal to present identification in a lawful Terry stop, we believe *Albright* is analogous to the present case, and conclude Officer Woods could have reasonably believed Mr. Oliver violated Utah Code Ann. § 76-8-305 by refusing to identify himself.

22

Finally, we conclude Mr. Oliver had no clearly established constitutional right to violate Utah Code Ann. § 76-8-305 by refusing to identify himself and by leaving Dave's parking lot. In *Brown*, the Supreme Court made it clear the Fourth Amendment does not permit officers to arrest an individual simply because he or she refuses to present identification when the officers have no basis whatsoever to suspect the individual of criminal conduct to support the initial detention. This is the case even when a state statute might seem to furnish the authority to do so. 443 U.S. at 52-53. However, the Supreme Court expressly declined to address whether an individual has the right to refuse to present identification during a lawful investigative detention. *Id.* at 53 n.3. In *Kolender v. Lawson*, 461 U.S. 352 (1983), the court once again turned down the opportunity to address this issue. *Id.* at 361 n.10 (declining to address whether a California statute which required an individual to present identification in the context of a lawful investigative stop was in violation of the Fourth Amendment). Furthermore, in *Albright*, this court expressly held the right to refuse to present identification in the context of a lawful investigative detention has not been clearly established. 51 F.3d at 1537-38. *See also Gainor v. Rogers*, 973 F.2d 1379, 1386 n.10 (8th Cir. 1992) (noting the Supreme Court has not determined if a person can be lawfully arrested for refusing to identify himself or herself in the

context of a lawful investigative stop).  *See also  Tom v. Voida* , 963 F.2d 952, 959 & n.8 (7th Cir. 1992) (concluding it is an open question whether citizens can refuse to respond to questions posed during lawful investigative stops)    .  Because the initial stop was based on reasonable suspicion of criminal activity, the application of  Utah Code Ann. § 76-8-305 to the present situation would not violate Mr. Oliver's clearly established rights.

C.  Officer Woods' Entitlement to Qualified Immunity

Mr. Oliver failed to show Officer Woods violated his clearly established constitutional or statutory rights.  Because the initial stop was lawful, Mr. Oliver had no clearly established constitutional right to refuse to identify himself and to terminate the encounter.  Even though the record indicates Officer Woods no longer suspected Mr. Oliver of illegal oil dumping, trespass, or any other illegal act in the parking lot connected to his original suspicion of criminal activity, Officer Woods could have reasonably believed he had probable cause to arrest Mr. Oliver for violating § 76-8-305 when Mr. Oliver refused to identify himself and left the parking lot.  We conclude Officer Woods is entitled to qualified immunity.

D.  Officer Scow's Entitlement to Qualified Immunity

24

The district court determined Officer Scow was not entitled to qualified immunity because the facts related to him by Officer Woods and the dispatcher were inadequate to justify Officer Scow's belief that a crime had been committed. The district court stated:

> Like Officer Woods, Officer Scow knew that the alarm was not a burglar alarm, but an exterior alarm that was tripped simply by breaking an infrared beam. He also knew that Officer Woods was inexperienced, yet passed up the opportunity to elicit further details from him before they approached Oliver's Chrysler.

Police officers are entitled to rely upon information relayed to them by other officers in determining whether there is reasonable suspicion to justify an investigative detention or probable cause to arrest. *See Albright*, 51 F.3d at 1536 (citing *United States v. Maestas*, 2 F.3d 1485, 1493 (10th Cir. 1993); *United States v. Torres*, 663 F.2d 1019, 1022 (10th Cir. 1981), *cert. denied*, 456 U.S. 973 (1982)). As the Supreme Court noted in *United States v. Hensley*, 469 U.S. 221 (1985):

> "[E]ffective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another and ... officers, who must often act swiftly, cannot be expected to cross-examine their fellow officers about the foundation for the transmitted information."

*Id.* at 231 (quoting *United States v. Robinson*, 536 F.2d 1298, 1299 (9th Cir. 1976)). However, the reliance upon this information must be objectively reasonable. *Baptiste*, 147 F.3d at 1260 ("a police officer who acts 'in reliance on

25

what proves to be the flawed conclusions of a fellow police officer' may nonetheless be entitled to qualified immunity as long as the officer's reliance was 'objectively reasonable.'" (quoting *Rogers v. Powell*, 120 F.3d 446, 455 (3d Cir. 1997))).

As Officer Scow responded to the call to assist Officer Woods, he learned an alarm had been activated and the suspect had left the scene. Before the officers approached Mr. Oliver on the highway, Officer Woods told Officer Scow a "varda" alarm had been triggered. Officer Woods also told Officer Scow he found the suspect in a car in the parking lot where the alarm had been activated and the suspect drove away after refusing to identify himself. We conclude this information was sufficient to justify Officer Scow's reliance upon Officer Woods' determination of reasonable suspicion of criminal activity. Officer Scow was not required to interrogate Officer Woods concerning every facet of his original suspicion of Mr. Oliver. Officer Scow was also not required to inquire further into Officer Woods' original suspicion of criminal activity simply because Officer Woods was less experienced than Officer Scow. Officer Scow's reliance on Officer Woods' determination of reasonable suspicion for the original stop was objectively reasonable based on the facts related to him by Officer Woods.

26

Furthermore, based on the information related to him by Officer Woods, Officer Scow could have reasonably believed Mr. Oliver violated Utah Code Ann. § 76-8-305 when he refused to identify himself and left Dave's parking lot. Even after Officer Scow became aware that Officer Woods no longer suspected Mr. Oliver of criminal activity in connection with the activation of the "varda" alarm, but was only pursuing Mr. Oliver because he refused to identify himself, Officer Scow could reasonably believe the officers had probable cause to arrest Mr. Oliver for refusing to identify himself and leaving the scene of the investigation. Moreover, Officer Scow personally observed Mr. Oliver refuse to identify himself on the highway. Thus, Officer Scow did not violate Mr. Oliver's clearly established constitutional rights by arresting Mr. Oliver. Therefore, we conclude Officer Scow is entitled to qualified immunity.

The judgment of the United States District Court for the District of Utah is **REVERSED** and **REMANDED** for further proceedings in accordance with this opinion.

<u>Oliver v. Woods</u>, 98-4179
**EBEL**, Circuit Judge, Dissenting in part and Concurring in part.

I disagree with the majority's conclusion that Officer Woods is entitled to qualified immunity on summary judgment. An individual's clearly established right to be free of unreasonable searches and seizures is violated when a law enforcement officer attempts to detain him or her without at least reasonable suspicion supported by articulable facts of wrongdoing. <u>See</u> <u>United States v. Espinosa</u>, 782 F.2d 888, 890 (10th Cir. 1986). Absent such reasonable suspicion or probable cause, an officer may stop and question only with the consent of the individual. <u>See</u> <u>id.</u> By definition, an individual may terminate a consensual encounter without detriment. In the present case, in my view, Mr. Oliver attempted to terminate a consensual encounter with Officer Woods and Officer Woods violated his clearly established Fourth Amendment rights by the subsequent stop and arrest.

As the majority correctly notes, we examine the totality of the circumstances and ask whether the officer had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." <u>United States v. Cortez</u>, 449 U.S. 411, 417-18 (1981). If no such basis exists, then the officer lacks the authority to conduct more than a consensual encounter. Viewed in the proper context, the facts of the present case do not form a "particularized and objective basis" for suspecting Mr. Oliver of criminal wrongdoing. Consequently, Officer Woods was entitled to question Mr. Oliver only with the

latter's consent, and Mr. Oliver therefore had no duty to identify himself before leaving the premises.

Under the summary judgment standard, we accept the following facts as true. Officer Woods turned around and followed the cars of Mr. Oliver and his son into the parking lot of Dave's Import Auto Shop shortly before opening. Mr. Oliver exited his vehicle, left it at the auto shop, and got into the driver's seat of the second car. Officer Woods admitted that he saw no evidence that Mr. Oliver had deposited any items in the parking lot of the shop, other than the car he had parked.

It is not disputed that a "varda" alarm had been installed on the premises in response to two instances of illegal oil dumping, and that Officer Woods was aware of the alarm and the reason for the installation. Nevertheless, the alarm indicated only that a vehicle had entered the public parking lot of an auto repair shop, where it was routine for customers to leave their automobiles prior to opening. This fact sharply distinguishes the present case from those involving interior burglar alarms, where a much higher presumption of wrongdoing arises upon activation. Similarly, this case is unlike United States v. Doyle, 129 F.3d 1372 (10th Cir. 1997), where an alarm had been installed on a road crossing the border between the United States and Mexico. The officer in Doyle had a number of valid reasons to suspect criminal activity because, among other things,

the vehicle had most likely tripped a hidden sensor monitoring traffic across the international border at an unauthorized checkpoint, and because he had verified that the vehicle had not legally crossed the border in the past seventy-two hours. By contrast, merely entering the driveway of Dave's Import Auto Shop shortly before opening does not even remotely suggest criminal wrongdoing. Indeed, it seems extremely unlikely that a potential oil-dumper would illegally dump oil and then leave behind his own car for repairs. Viewed in this context, and in light of the complete absence of other indicia of criminal activity, the facts in this case cannot support the reasonable suspicion necessary to detain Mr. Oliver.

If there is no reasonable suspicion to question Mr. Oliver, then the encounter was merely consensual. As such, Mr. Oliver was free to leave at any time, without identifying himself to Officer Woods. Of course, terminating a consensual encounter does not justify further detention, and thus the subsequent stop and arrest were improper. Officer Woods violated the clearly established constitutional right of Mr. Oliver by attempting to detain him without a reasonable suspicion of wrongdoing. Officer Woods is therefore not entitled to qualified immunity for his actions on summary judgment.

I agree, however, with the majority's conclusion with regard to Officer Scow. It is clear that "[o]fficers may rely on information furnished by other law enforcement officials to establish reasonable suspicion and to develop probable

cause for an arrest." See Albright v. Rodriguez, 51 F.3d 1531, 1536 (citations omitted). Based on the brief exchange between Officer Woods and Officer Scow when the latter arrived on the scene, it appears that Officer Scow received incomplete information describing the preceding events. Officer Scow was not, however, obligated to "cross-examine [his] fellow officer[] about the foundation for the transmitted information." United States v. Hensley, 469 U.S. 221, 231 (1985) (internal quotation marks omitted). It was sufficient that Officer Scow reasonably believed Officer Woods had properly required Oliver to identify himself. Even though Woods later concluded and informed Scow that Oliver was no longer under suspicion for dumping oil, the fact that Oliver refused to identify himself was sufficient to justify Scow's actions as long as he reasonably believed Woods' initial encounter was supported by reasonable suspicion. Under the circumstances, Officer Scow's reliance upon Officer Woods' conclusions was objectively reasonable, see Baptiste v. J.C. Penny Co., 147 F.3d, 1252, 1260 (10th Cir. 1998), and he is therefore entitled to qualified immunity.

Because I believe Officer Woods had no reasonable basis to support more than a consensual stop of Mr. Oliver, I respectfully dissent from the majority's conclusion that Officer Woods is entitled to qualified immunity on summary judgment. I concur in the majority's determination that Officer Scow is entitled to qualified immunity on summary judgment.

-4-