**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 17, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TENNILLE SEGURA,

     Plaintiff - Appellee,

and

MARGARET RICH,

     Plaintiff,

v.

RICH JONES, Individually,

     Defendant - Appellant,

and

HOBBY LOBBY STORES, Inc.,

     Defendant.

No. 07-1013
(D.C. No. 06-CV-283-LTB)
(District of Colorado)

**ORDER AND JUDGMENT**[*]

Before **KELLY, HOLLOWAY** and **HOLMES**, Circuit Judges.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P.32.1 and 10th Cir. R. 32.1.

# I. INTRODUCTION

Plaintiff Tennille Segura brought a federal claim pursuant to 42 U.S.C. § 1983 against Defendant Officer Rich Jones. Jurisdiction in the District Court was proper pursuant to 29 U.S.C. §1331. Officer Jones filed a qualified immunity-based summary judgment motion which the Court granted in part and denied in part on December 8, 2006. Officer Jones filed his notice of appeal on January 4, 2007 regarding the denial of that part of the motion dealing with the 42 U.S.C. § 1983 claim. This is an appeal of a final order as defined by *Mitchell v. Forsyth*, thereby providing this court with interlocutory jurisdiction pursuant to 29 U.S.C. §1291. 472 U.S. 511, 530 (1985)(holding that a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable final decision within the meaning of 28 U.S.C. § 1291).

# II. BACKGROUND

Ms. Tennille Segura and her friend, Ms. Margaret Rich, were shopping at a Hobby Lobby store. The manager of the store suspected them of shoplifting and confronted the two women, asking them to step into his office. The manager asked the women to empty their pockets and they refused to do so. Instead, the women requested that the manager call the police. Officer Jones responded to the call, but prior to any encounter with Ms. Segura and Ms. Rich, Officer Jones needed to contact the dispatcher in order to determine if the women in question had any outstanding warrants or prior arrests. This is standard police procedure. Officer Jones had little information about the situation because the women refused to provide identification to the store manager. Upon Officer Jones's

arrival he was unaware of the status of the individuals' potential criminal histories.

This is the type of background information that an officer has prior to entering the scene. Upon Officer Jones's arrival at the scene, he asked the two women for identification. Ms. Rich produced identification when asked, but Ms. Segura did not have any identification on her. At this time, Officer Jones pulled her arms behind her back, handcuffed her, and pushed her up against the wall. Officer Jones was 6'5" and 370 pounds. Ms. Segura was in handcuffs for roughly five minutes until she gave Officer Jones her name and date of birth in order to obtain the necessary information regarding any outstanding warrants and her criminal history. After he confirmed her identity and ascertained that she had no outstanding warrants, Officer Jones removed the handcuffs. He then conducted a short investigation into the shoplifting allegations raised by the manager and found no evidence of misconduct. He then let the women leave.

The two women sued Hobby Lobby under various state tort theories, not at issue in this appeal. They brought an action against Officer Jones under 42 U.S.C. § 1983 alleging violations of their First, Fourth, and Fourteenth Amendment rights. After discovery was substantially completed, Officer Jones filed a qualified immunity summary judgment motion. The court granted the motion in its entirety as it applied to Ms. Rich's action against Officer Jones. With respect to Ms. Segura's claim, the court granted Officer Jones's motion except as it concerned the force used in placing Ms. Segura in handcuffs and pushing her. This issue, the denial of qualified immunity on that conduct, is the sole issue on appeal.

# III. DISCUSSION

*A. Jurisdiction and Standard of Review*

Generally, denial of summary judgment is not immediately appealable. *McFall v. Bednar*, 407 F.3d 1081, 1086 (10th Cir.2005). However, when a summary judgment motion is based on qualified immunity, a district court's denial of the motion is subject to appeal when the issue is a legal one. *Behrens v. Pelletier*, 516 U.S. 299, 312-13 (1996). *Mitchell v. Forsyth* held that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Our precedent also indicates that questions concerning the applicability of qualified immunity should be resolved as early as possible. *Oliver v. Woods*, 209 F.3d 1179, 1185 (10th Cir. 2000).

As with other questions of law, we exercise de novo review over a district court's denial of the defendant's qualified immunity based summary judgment motion. *Holland v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001). In our recent decision, *Cortez v. McCauley*, we reiterated our previously settled legal principle that "[b]ecause of the underlying purposes of qualified immunity, we review summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions." 478 F.3d 1108, 1114 (10th Cir. 2007) (hereinafter *Cortez II*) (citing *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001)). Because the motion for summary judgment at issue invokes a claim of qualified immunity and concerns abstract issues of

- 4 -

law, we have jurisdiction.

*B. Issues on Appeal*

The Defendant-Appellant, Officer Jones, filed a timely notice of appeal regarding the district court's partial denial of his immunity based motion for summary judgment. Nearly his entire opening brief discusses that jurisdictional issue. However, the Plaintiff-Appellee's response brief, while addressing the Defendant-Appellant's argument and urging affirmance of the district court's denial of his summary judgment motion also treats a different issue ruled on by the district court. Plaintiff-Appellee Segura argues that the her detention *itself* was a constitutional violation. Plaintiff-Appellee did not cross-appeal on this issue and the Defendant-Appellant Jones urges this court not to consider that issue on the grounds that it was not properly appealed.

In *Montgomery v. City of Ardmore*, 365 F.3d 926 (10th Cir. 2001), this court stated that "[i]t is well-recognized that an appellee who has failed to file a cross-appeal cannot 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary.'" (quoting *Burgo v. Gen. Dynamics Corp.*, 122 F.3d 140, 145 (2d Cir.1997) (quoting *Morley Constr. Co. v. Maryland Cas. Co.*, 300 U.S. 185, 191 (1937) (Cardozo, J.)). However, in that same section of the *City of Ardmore* opinion, we also cite a Second Circuit opinion, *Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 38 F.3d 1279, 1286 (2d Cir.1994), which held that "an appellee who has not cross-appealed may urge alternative grounds for affirmance [of the judgment but] it may

not seek to enlarge its rights under the judgment by enlarging the amount of damages or scope of equitable relief." Thus, the question here becomes whether the Plaintiff-Appellee Segura is merely urging alternative grounds for an affirmance or is attempting to expand the scope of her rights.

A recent en banc opinion of this court provides our answer. In *Cortez II*, we wrestled with the relationship between an excessive force claim and an unlawful seizure claim in a single action. 478 F.3d 1108, 1127. We held that

> in cases involving claims of both unlawful arrest and excessive force arising from a single encounter, it is necessary to consider both the justification the officers had for the arrest and the degree of force they used to effect it. If the plaintiff can prove that the officers lacked probable cause, he is entitled to damages for the unlawful arrest, which includes damages resulting from any force reasonably employed in effecting the arrest. If the plaintiff can prove that the officers used greater force than would have been reasonably necessary to effect a lawful arrest, he is entitled to damages resulting from that excessive force. These two inquiries are separate and independent, though the evidence may overlap....The plaintiff might succeed in proving the unlawful arrest claim, the excessive force claim, both, or neither...[1]

*Cortez II*, 478 F.3d 1108, 1127. The developing jurisprudence regarding the independence of these claims, even though they may arise from a single encounter, governs our analysis as to whether Ms. Segura is attempting to enlarge her rights under the district court's decree or whether she is merely advocating an affirmance on different

---

[1] The majority opinion in *Cortez II* states that "similar analysis applies to claims of unlawful detention and excessive force: in cases involving claims of both unlawful detention and excessive force arising from a single encounter, it is necessary to consider both the justification the officers had for the detention and the degree of force they used to effect it...These two inquiries are separate and independent, though the evidence may overlap." *Cortez II*, 478 F.3d 1108, 1127 n. 23.

- 6 -

grounds. Because *Cortez II* made clear that these two claims are independent, thereby allowing a plaintiff recovery under both, either or neither, we find that Ms. Segura is attempting to enlarge her rights. Thus, under our precedents in *City of Ardmore* and *Cortez II*, Ms. Segura's argument regarding the constitutionality of the detention is not properly before us because she failed to cross-appeal. This leaves as the only issue on appeal whether the district court erred in denying the assertion by Officer Jones of qualified immunity as a response to Ms. Segura's 42 U.S.C. § 1983 claim.

*C. Undisputed Facts and Qualified Immunity*

It should be noted at the beginning that Officer Jones assumed the facts as presented by Ms. Segura. While the district court noted a discrepancy in the parties' accounts of what happened, stemming from various depositions given by Officer Jones and Ms. Segura, defense counsel stated in his opening brief, and reiterated at oral argument, that Officer Jones did not dispute Ms. Segura's factual account. This is an important point, because as *Cortez II* pointed out, this particular issue impacts not only the factual record in the case but also jurisdiction:

> [o]f course, this court lacks jurisdiction over an appeal from the denial of a defendant's summary judgment order based on qualified immunity insofar as that order determines whether or not the pretrial record sets forth a genuine issue of fact for trial. *Johnson v. Jones*, 515 U.S. 304, 319-20, 115 S.Ct. 2151. We may exercise jurisdiction over such an order when we are presented with "neat abstract issues of law." *Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th Cir.1997).

*Cortez II*, 478 F.3d at 1121 n. 16.

- 7 -

In the instant case, the facts are not in dispute. For comparative purposes, in *Barrie v. Grand County, Utah*, 119 F.3d 862 (10th Cir. 1997), we ruled that the district court properly denied the defendant's qualified immunity based motion for summary judgment because there "was a genuine dispute as to just what happened." 119 F.3d 862, 866. In *Cruz v. City of Laramie, Wyoming*, we noted the Supreme Court decision in *Johnson v. Jones*, 515 U.S. 304, 313 (1995), directing appellate courts that they "may not review a district court's resolution of disputed facts, but may review only purely legal determinations..." 239 F.3d 1183, 1187 (10th Cir. 2001). Therefore, our inquiry into whether the district court erred in denying Officer Jones's qualified immunity based summary judgment motion may proceed precisely because the "what happened questions" are agreed upon by the parties and all that remain are the questions of law.

*D. Two-Part Qualified Immunity Analysis*

As previously stated, when faced with a qualified immunity based motion for summary judgement, the burden shifts to the plaintiff. *Cortez II*, 478 F.3d at 1114. This burden shifting mechanism requires that a plaintiff show that (1) the defendant violated a constitutional or statutory right and (2) the right was clearly established at the time of the defendant's unlawful conduct. *Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007).

Both *Mecham v. Frazier* and *Cortez II* are on point in the instant case since they both address excessive force claims. In *Frazier*, this court stated that the first question in

the qualified immunity analysis is whether, taking the plaintiff's allegations as true, the defendant violated her constitutional rights. *Frazier*, 500 F.3d at 1204; *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir.2004).

The second question was discussed in greater detail in *Cortez II*. Where a constitutional violation has been shown, the plaintiff must subsequently prove that the right was clearly established. *Cortez II*, 478 F.3d at 1114. We made clear that this second question "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Cortez II*, 478 F.3d at 1114 (internal citations and quotations omitted). Citing the Supreme Court's decision in *Saucier v. Katz*, we explained the contours of the phrase "clearly established right." 533 U.S. 194. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation...." *Cortez II*, 478 F.3d at 1114 (quoting *Saucier*, 533 U.S. at 202). With specific regard to the standard that a plaintiff must meet in order to show that a right is clearly established, we held in *Cortez II* that "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Cortez II*, 478 F.3d at 1114-15 (quoting *Medina v. City of Denver*, 960 F.2d 1493, 1498 (10th Cir.1992)).

Additionally, we explained the interplay between this doctrinal analysis, specifically the second question, and a motion for summary judgment by stating that

"[s]ummary judgment based on qualified immunity is appropriate if the law did not put the officer on notice that his conduct would be clearly unlawful." *Cortez II*, 478 F.3d at 1114 (citing *Saucier*, 533 U.S. at 202).

*E. Excessive Force Claims and Qualified Immunity*

The issue in the instant case deals with the alleged use of excessive force. The *Cortez II* court stated that in order for a plaintiff's excessive force claim to succeed against a defendant's qualified immunity based summary judgment motion "a plaintiff is required to show that the force used was impermissible (a constitutional violation) and that objectively reasonable officers could not have not thought the force constitutionally permissible (violates clearly established law)." *Cortez II*, 478 F.3d at 1128. Ms. Segura offers two arguments to show that Officer Jones used excessive force: (1) through the use of handcuffs and (2) by pushing her into the wall.

1. Handcuffing

The district court determined that Officer Jones initiated an investigative detention, not an arrest. Dist. Ct. Or. at 5. The district court also reasoned that Officer Jones used the handcuffs on Ms. Segura, knowing that she had previously refused to cooperate, in order to preclude her escape and did so only long enough to obtain her identity and criminal record. *Id.* The district court held that in light of the fact that Officer Jones was alone, and the previous behavior by Ms. Segura, the seizure constituted a lawful

- 10 -

investigative detention under *Terry v. Ohio*, 392 U.S. 1 (1968). It is also noteworthy that the record indicates that the manager told Officer Jones that the suspects were in the aisle of the store containing scissors and knives. This background is relevant in ascertaining what the appropriate level of force would be in this situation because we stated in *Cortez II* that "police have historically been able to use more force in making an arrest than in effecting an investigative detention." *Cortez II*, 478 F.3d at 1126.

Ms. Segura argues that the use of handcuffs violated her Fourth and Fourteenth Amendment rights to be free from the use of excessive force in the context of an investigative detention. The handcuffs were on Ms. Segura for roughly five minutes and left marks on her wrists that disappeared within a day. Ms. Segura makes no allegations in her brief regarding any psychological injuries sustained by the incident.

Once again, *Cortez II* is instructive in providing the legal principles necessary in analyzing whether excessive force was used in effectuating an investigative detention. There is a balancing of concerns that occurs when evaluating the appropriate level of force to be used in a *Terry* stop. "Although *Terry* stops are normally nonintrusive, we have indicated that law enforcement may (1) display some force, (2) place suspects on the ground, (3) use handcuffs, or (4) detain suspects in law enforcement vehicles, even in the absence of probable cause." *Cortez II*, 478 F.3d at 1130 (quoting *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993)). In *Graham v. Connor*, the Supreme Court held that "[o]ur Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of

physical coercion or threat thereof to effect it." 490 U.S. 386, 396 (1989). We also have held that an escalation in the level of force used in a *Terry* stop can change the detention into an arrest. *United States v. Shareef*, 100 F.3d 1491, 1507 (10th Cir.1996).

"We apply Fourth Amendment standards of objective reasonableness to analyze constitutional claims of excessive force." *Graham*, 490 U.S. 386, 396-97. We must evaluate whether the manner in which Officer Jones handcuffed Ms. Segura constitutes excessive force. At the outset, we must determine if it was reasonable for Officer Jones to use handcuffs on Ms. Segura. This reasonableness inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. 386, 396; *see also Oliver v. Woods*, 209 F.3d 1179 (10th Cir. 2000). Additionally, in *United States v. Neff*, we held that the use of handcuffs during an investigative detention is acceptable if done to "maintain the status quo during the course of [the detention]." 300 F.3d 1217, 1220-21 (10th Cir. 2002). Also, we further held in *United States v. Neff* that the "use of handcuffs is not a per se violation of the rights of a person being detained for investigation based on reasonable suspicion." 300 F.3d at 1220.

Officer Jones responded to a call where neither suspect had cooperated in providing identification to the store manager. Thus, Officer Jones was unable to obtain any information about possible warrants or their criminal histories. Further, the

knowledge that the suspects had been uncooperative necessarily informs the officer as to how he should proceed in acting towards the suspects. Ms. Segura was not a bystander either–she was one of the suspects. Officer Jones already was aware that both suspects had refused to cooperate in providing identification. Finally, he had been told that they were acting suspiciously while in the store.

The handcuffs were on Ms. Segura for approximately five minutes and were removed after she provided Officer Jones with her name and a valid address so that he would know whether she had any warrants or criminal history. In comparison, Ms. Rich, who was also in the room at the time, provided Officer Jones with identification thereby precluding any need for him to handcuff her. With her name and address, she would be less likely to flee because police would more easily be able to find her. Also, with the knowledge that Ms. Rich had no prior criminal history or warrants for arrest, Officer Jones was able to determine that she posed little threat or risk of flight. This different treatment of the two suspects is relevant in determining whether Officer Jones's handcuffing of Ms. Segura was reasonable.

Looking at the totality of the circumstances that Officer Jones confronted, we cannot say that the use of the handcuffs on Ms. Segura was unreasonable or excessive. Officer Jones had no information about her, knew that she had been uncooperative, and was seen acting suspiciously in the aisle containing scissors and knives. Thus, the brief use of handcuffs to ensure both his own and the suspect's safety while preventing her from fleeing was reasonable.

An excessive force claim requires some actual injury, be it physical or emotional, that is not de minimis. *Cortez II*, 478 F.3d at 1129. The handcuffs were on Ms. Segura for roughly five minutes and the marks that they left on her wrists were gone by the next day. We feel that thi*s* degree of distress or pain falls into the category of de minimis. In *Cortez II*, we held that the use of handcuffs which left marks lasting for four days was "insufficient, as a matter of law, to support an excessive force claim if the use of handcuffs is otherwise justified." 478 F.3d at 1129. Again, based on the circumstances before Officer Jones, the brief use of handcuffs was not unreasonable because she had been uncooperative, the officer wanted to prevent the suspect from injuring either herself or himself, and in an attempt to preclude her from trying to escape which would have further escalated the potential danger to either party and the level of force used to subdue the suspect. The conduct as to Ms. Segura's wrists did not rise to the level necessary to sustain an excessive force claim based on the use of handcuffs.

2. Pushing

The second basis for excessive force raised by Ms. Segura is that Officer Jones pushed her against the wall in order to place the handcuffs on her. Ms. Segura stated that her face hit the wall when Officer Jones was placing the handcuffs on her, although there were no visible marks, cuts or abrasions on her face. Also, Ms. Segura stated that Officer Jones exacerbated her back injury when he pushed her against the wall. She took pain medication that evening to allay her discomfort. The injury stemmed from a

previously herniated disk in her back that was last re-injured while she was gardening.

The case relevant to this claim is *Saucier v. Katz.* 533 U.S. 194 (2001). That case involved the shoving of an elderly man, with a visible leg brace on, into the back of a police van. *Saucier*, 533 U.S. at 198. The Court held that pushes and shoves must be adjudged under the Fourth Amendment reasonableness requirement. *Id.* at 209. The Court went on to say that the officer "did not know the full extent of the threat respondent posed or how many other persons there might be who, in concert with respondent, posed a threat..." *Id.* at 208. The officer's lack of knowledge in *Saucier v. Katz* is similar to Officer Jones's circumstances in the instant case. Fourth Amendment reasonableness analysis "must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

In *Saucier*, the Court held that the officer who pushed the suspect was entitled to qualified immunity because his actions did not violate clearly established law. 533 U.S. at 208-209. There the suspect was wearing a large and visible leg brace. In the instant case, Officer Jones had no way of knowing that Ms. Segura had a previous back injury that occasionally could be exacerbated. The shove in *Saucier* was also of a more forceful nature than that in the instant case because it forced the suspect to the ground, whereas here, Ms. Segura's face pressed against the wall, leaving no mark or wound. In *Saucier*, the plaintiff argued that had he not caught himself, he would have sustained an injury.

- 15 -

Here, Ms. Segura provides no evidence of an injury to her face and stated that she needed pain medication for one evening to allay her back injury due to the push. Since the officer in Saucier was entitled to qualified immunity where there was a visible pre-existing condition, Officer Jones is entitled to qualified immunity where there was no cognizable indication of an already existing back injury. Further, the record does not bear out Ms. Segura's claim that the injuries to her face were substantial enough to be more than de minimis.

In sum, we find that the district court erred in denying Officer Jones's qualified immunity summary judgment motion with respect to Ms. Segura's 42 U.S.C. § 1983 excessive force claim as to both the handcuffing and the push. We REVERSE the district court's partial denial of Officer Jones's qualified immunity motion for summary judgment and REMAND for further proceedings in accordance with this opinion.

Entered for the Court

William J. Holloway, Jr.
Circuit Judge