FILED
United States Court of Appeals
Tenth Circuit

September 11, 2007

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LEMANDA LILLIAN MECHAM,

      Plaintiff-Appellee,

v.

SEAN D. FRAZIER, and DAVID L. JOHNSON,

      Defendants-Appellants.

No. 05-4297

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. NO. 1:04-CV-33-BSJ)**

---

J. Clifford Peterson, Assistant Utah Attorney General (Mark L. Shurtleff, Utah Attorney General with him on the briefs), Utah Attorney General's Office, Salt Lake City, Utah, for Defendants-Appellants.

Cory B Mattson, Cory B Mattson, L.C., Sandy, Utah, for Plaintiff-Appellee.

---

Before **TYMKOVICH** and **BALDOCK**, Circuit Judges, and **FIGA**, District Judge.[*]

---

**TYMKOVICH**, Circuit Judge.

---

[*] The Honorable Phillip S. Figa, United States District Court Judge, District of Colorado, sitting by designation.

This is an interlocutory appeal of the district court's denial of federal

qualified immunity to two Utah police officers. Lemanda Mecham brought a 42

U.S.C. § 1983 claim against state troopers Sean Frazier and David Johnson,

alleging they used excessive force in effectuating her 2003 roadside arrest.[1] The

officers moved for summary judgment on grounds of qualified immunity. The

district court denied the motion and this appeal followed.

Having jurisdiction to consider the denial of federal qualified immunity

under 28 U.S.C. § 1291, we REVERSE the district court's denial of the officers'

motion for summary judgment.

## I. Background

The facts of this case are essentially undisputed.[2] Just after noon on

February 23, 2003, Frazier pulled Mecham over as she was driving on Interstate

Highway I-15 in southeast Utah. Frazier approached Mecham's car and told her

she was being pulled over for driving five miles over the speed limit and for

failing to wear her seat belt.

---

[1] Mecham also filed seven causes of action under state law, which are the subject of a separate appeal, *Mecham v. Frazier*, 04-4262. In defense of those claims, the officers asserted immunity under the Utah Governmental Immunity Act. We certified on our own motion two questions involving the application of the Act to the Utah Supreme Court.

[2] The facts are in little doubt since Frazier's squad car was equipped with a dashboard camera which recorded the incident. *See Scott v. Harris*, 127 S. Ct. 1769, 1775 (2007) (appending link to videotape to opinion, stating "We are happy to allow the videotape to speak for itself.").

Returning to his car to check Mecham's license and registration, Frazier learned the Arizona license she had given him was suspended. Dispatch informed him, however, that Mecham had a valid Utah license. When Frazier inquired about the Utah license, Mecham, for reasons not in the record, said she did not have a Utah license. Frazier accordingly told Mecham she could not drive without a license and that the car would be impounded unless she could arrange for someone to pick it up.

At that point, Mecham's mother called on her cell phone and Mecham took the call. Frazier told Mecham to put down the phone while he explained the citation, but Mecham ignored him and continued talking to her mother. Frazier told Mecham he would arrest her unless she cooperated. When she refused to end her phone conversation, Frazier called dispatch to order a tow truck.[3]

The tow truck arrived fifteen minutes later, at which point Frazier told Mecham the car was being impounded and to get out of the car. Mecham said she was going to sit in her car until her mother arrived. Frazier called for backup and Officer Johnson arrived a few minutes later. Frazier told Johnson that he was going to arrest Mecham because she had been uncooperative and refused to get out of her car.

---

[3] In her pleadings, Mecham explains she was reluctant to cooperate because "she knew of no basis for her license to be suspended and feared Trooper Frazier may have been using it as a pretext to get her out of the car." R. at 34.

Frazier approached Mecham's car from the driver's side while Johnson approached from the passenger's side. Frazier told Mecham to get out of the car or he would have to physically remove her, but she again refused. Frazier then sprayed Mecham in the face with pepper spray, opened the driver's side door, and physically removed her from the car. Johnson and Frazier pulled Mecham to the rear of the car, put her on the ground, and handcuffed her. Frazier then called for medical assistance.

Mecham was taken to the hospital where she was treated for pepper spray inhalation. Afterwards, Frazier took her to the Davis County jail where she was booked. All charges against Mecham arising from the incident were later dropped.

## II. Discussion

Public officials facing civil liability for alleged constitutional violations may assert qualified immunity. The doctrine, which provides "immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), prevents undue interference with public affairs by cutting short baseless litigation against government actors. Because qualified immunity is effectively lost if a case is permitted to go to trial, "it should be resolved as early as possible." *Oliver v. Woods*, 209 F.3d 1179, 1185 (10th Cir. 2000) (internal citation omitted).

-4-

Mecham alleges defendant officers used excessive force in violation of her Fourth Amendment rights. In excessive force claims, a suspect's constitutional rights are not violated if the amount of force used by police was "objectively reasonable." *Graham v. Connor*, 490 U.S. 386 (1989). The officers say their use of pepper spray was objectively reasonable in light of Mecham's resistance throughout the fifty-minute traffic stop. The district court concluded the issue was not ripe on summary judgment, finding that "although there is no dispute as to the underlying events in this case, the ultimate question – the objective reasonableness of Defendants' actions under the circumstances – remains." Aplt. Br., Add. A at 2.

"[A] district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). As with other legal questions, we review the denial of qualified immunity de novo. *Holland v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001).

The district court held "the question of objective reasonableness is one for the jury to decide." Aplt. Br., Add. A at 2. While this proposition might hold where there are disputed issues of material fact, the question of objective reasonableness is *not* for the jury to decide where the facts are uncontroverted. We have analyzed this question before:

[T]he district court found the material facts were not in dispute. Despite this finding, however, the court apparently determined that issues of material fact remain regarding the objective reasonableness of the officers' actions. *Whether the officers acted reasonably, however, is a legal determination in the absence of disputed material facts.* Although the reasonableness standard is inevitably fact dependent, it should not be reserved for the jury in the absence of disputed material facts. Because qualified immunity is a question of law to be resolved at the earliest possible stage of litigation, courts often engage in determinations of reasonableness under the Fourth Amendment, necessarily applying the undisputed material facts to the legal standards.

*Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (emphasis added). Here, although the district court recognized "there is no dispute as to the underlying events," it nevertheless found the reasonableness determination was for the jury. In light of *Medina*, the district court should have decided qualified immunity as a matter of law. *See also Scott v. Harris*, 127 S. Ct. 1769 (2007) (deciding qualified immunity on undisputed facts).

In our view, the police officers were entitled to qualified immunity.

**A.**

Under our case law, a plaintiff seeking to avoid summary judgment on qualified immunity grounds must satisfy a "heavy" two-part burden by showing: (1) the defendant violated a constitutional or statutory right, and (2) the right was clearly established at the time of the defendant's unlawful conduct. *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1150 (10th Cir. 2006) (internal

quotation omitted).  Because Mecham fails to meet both prongs, we conclude

defendants are entitled to qualified immunity as a matter of law.

"Our threshold inquiry in the qualified immunity analysis is whether, taking

[Mecham's] allegations as true, [defendants] violated [her] Fourth Amendment

right to be free from unreasonable seizures."  *Jones v. Hunt*, 410 F.3d 1221, 1225

(10th Cir. 2005).  We analyze claims of excessive force under the objective

reasonableness standard of the Fourth Amendment.  *Graham*, 490 U.S. at 395.

"In determining the reasonableness of the manner in which a seizure is effected,

we must balance the nature and quality of the intrusion on the individual's Fourth

Amendment interests against the importance of the governmental interests alleged

to justify the intrusion." *Scott*, 127 S. Ct. at 1778 (internal quotation and citation

omitted).

> The reasonableness of an officer's conduct must be assessed "from the perspective of a reasonable officer on the scene," recognizing the fact that the officer may be "forced to make split-second judgments" under stressful and dangerous conditions.  The Fourth Amendment standard requires inquiry into the factual circumstances of every case; relevant factors include the crime's severity, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest.

*Gross v. Pirtle*, 245 F.3d 1151, 1158 (10th Cir. 2001) (quoting *Graham* at

396–97) (internal citations omitted).

Viewed in light of the last two *Graham* factors quoted above—the suspect's

resistance to arrest and safety concerns—the officers conduct in this case was

-7-

reasonable. As an initial matter, the traffic stop was justified at its inception because Mecham was speeding and also not wearing her seat belt in violation of Utah law.

Nevertheless, what should have been a routine encounter turned into a fifty-minute ordeal requiring arrest. Before the officers used force to remove Mecham from her car, the following events occurred. (1) Mecham balked at Frazier's report that her Arizona license was suspended—insisting it was valid—and then contributed to the unresolved mystery about her Utah license on file by denying its existence. (2) She then persisted in using a cell phone during the encounter despite Frazier's instructions to put it down. (3) She ignored his repeated warnings to get out of the car under penalty of arrest, and forced Frazier to call a tow truck and backup support.[4] (4) During this encounter, she remained in the driver's seat with the keys to the car, exercising control of the car at all times. (5) When backup officer Johnson arrived on the scene, she nonetheless ignored his additional entreaties to exit the car. (6) Then, she was given a last opportunity to cooperate when the officers told her point blank that further resistance would be met with arrest. (7) Mecham, again, refused and the officers

---

[4] Mecham's claim that she doubted Frazier's identity and feared he was using it as a pretense to get her out of the car is implausible. She had ample time and evidence, including the arrival of the tow truck, Johnson's arrival on the scene, two marked squad cars with flashing lights, to conclude Frazier was in fact an officer of the law.

followed through with their promised response. In these circumstances, it was a foregone conclusion that the officers would have to use force to make the arrest.

The objective reasonableness of the use of force was further reinforced by safety concerns. The encounter played out on the narrow shoulder of a busy interstate highway. The arrest videotape depicts the busy, high speed traffic on Interstate Highway I-15. Parked on the shoulder, Mecham's car was just a few feet from the highway's edge. An officer could reasonably be concerned that Mecham might create a danger to herself or others if not first subdued. While Frazier did not believe she was a flight risk, the fact of the matter was that she had her keys and control of the car while refusing to cooperate. In sum, Mecham's disregard for the officers' instructions, the length of the encounter, and the implausibility of Mecham's rationale for not cooperating, lead us to conclude that the officers' use of force was justified in these circumstances.

With the benefit of hindsight, one might have hoped for a different resolution. But "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396. In making an arrest, officers may inevitably "use some degree of

physical coercion or threat thereof to effect it." *Id.*[5] The force used here, while unfortunate, was not excessive.

**B.**

Even if the officers' use of pepper spray was not objectively reasonable, Mecham has failed to meet the other requirement necessary to defeat qualified immunity—that the law was clearly established at the time of the violation.

To assess whether the right was clearly established, we must ask if "the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Medina*, 252 F.3d at 1128. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation." *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (citations and quotations omitted).

---

[5] The officers argue that even if their use of force is deemed excessive, they are nevertheless entitled to qualified immunity because they reasonably relied on Utah state laws and policies that sanctioned the amount of force used. The Utah state patrol had policies and procedures governing the use of pepper spray, and it appears the officers complied with this policy. Because we conclude Mecham's Fourth Amendment rights were not violated in the first instance, we need not reach this issue. "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (emphasis in original).

> To survive a motion for summary judgment, the plaintiff must show the right was clearly established in a particularized sense. . . . This court has held that for a right to be particularized, there must ordinarily be a Supreme Court or Tenth Circuit decision on point, or clearly established weight of authority from other courts.

*Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995) (citations and quotations omitted). While the facts of the cases compared need not be identical, *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004), they must be sufficiently analogous to satisfy the particularized context necessary to support liability.

Mecham cites to an unpublished opinion from this circuit, *Martinez v. New Mexico Dep't of Public Safety*, 47 F. App'x 513 (10th Cir. 2002), to support her position that, at the time of her arrest, the law was clear that the force used in her case was excessive. In *Martinez*, officers used mace on a suspect who had already been removed from her car and handcuffed. Under these specific circumstances, the court found the use of mace was not reasonable as a matter of law since the suspect was already out of the car, handcuffed, and no longer a danger to herself or others. The circumstances facing the officers in Mecham's case were quite different. The pepper spray here was used to subdue and remove an uncooperative and unresponsive, belligerent traffic violator from the car she still controlled, not to further incapacitate an already subdued suspect. An

unpublished opinion, moreover, even if the facts were closer, provides little support for the notion that the law is clearly established on this point.[6]

In sum, the officers were entitled to qualified immunity because no clearly established law foreclosed the use of force in the circumstances here.

### IV. Conclusion

The officers' use of force was objectively reasonable in this case. We REVERSE the district court's denial of summary judgment on qualified immunity and REMAND for further proceedings consistent with this opinion.

---

[6] Mecham cites to several cases from other jurisdictions. *See*, *e.g.*, *Park v. Shiflett*, 250 F.3d 843 (4th Cir. 2001); *LaLonde v. County of Riverside*, 204 F.3d 947 (9th Cir. 2000). None of these cases is persuasive. Each involved force in excess of that used here, or is otherwise factually distinguishable. The reasonableness of the use of pepper spray will vary with the encounter. Here, as we discussed above, it was appropriate.