FILED
United States Court of Appeals
Tenth Circuit

November 26, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

OLGA SIMPSON, individually and
as mother and next friend of A.S.,
a minor, Y.S., a minor, and S.S.,
a minor,

       Plaintiff - Appellant,

v.

STATE OF KANSAS; DA'VON B.
BRAME,

       Defendants - Appellees.

No. 13-3272
(D.C. No. 2:12-CV-02402-JWL)
(D. Kansas)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **BALDOCK**, and **BACHARACH**, Circuit Judges.

Ms. Olga Simpson was driving her three young children when she

was stopped for seatbelt violations. The trooper issued a citation and

began to leave. Before he left, however, words were exchanged. The

---

[*]    The Court grants the parties' request for a decision on the briefs,
concluding that oral argument would not prove helpful. *See*
Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).

    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. But the
order and judgment may be cited for its persuasive value. *See*
Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

situation escalated, and the trooper arrested Ms. Simpson. She sued the trooper under 42 U.S.C. § 1983 and state law. The trooper successfully moved for summary judgment, and Ms. Simpson appealed.

There is little dispute about what took place, for most of the exchange is captured by a video recording. In considering what transpired against the backdrop of federal and state law, we must ask two questions:

1. Did the trooper have probable cause to arrest Ms. Simpson for misdemeanors involving seatbelt violations?

2. Did the trooper use excessive force when trying to arrest Ms. Simpson as she was resisting arrest on an entrance to a busy highway?

We conclude that Ms. Simpson failed to show a genuine issue of material fact concerning violation of the federal constitution or state law. As a result, we uphold the award of summary judgment to the trooper.

## I.     The Seatbelt Violations and the Arrest

Ms. Simpson was driving her three children home from school when she passed a state trooper, Da'von B. Brame. Trooper Brame saw that one of the children, who was in the front seat, was not wearing her seatbelt as required by Kansas law. The trooper made a U-turn and stopped Ms. Simpson's vehicle.

The stop took place on a highway on-ramp with heavy traffic. The trooper saw the children putting on their seatbelts and noticed that Ms. Simpson was not wearing a seatbelt.

While Ms. Simpson was looking for her license and insurance paperwork, Trooper Brame told her about a recent car accident resulting in the death of a 10-year-old girl who was not wearing a seatbelt. When Ms. Simpson shrugged in response, Trooper Brame became argumentative.

He took Ms. Simpson's license, verified that it was valid, wrote her a citation (notice to appear) for the seatbelt violations, and gave her the citation. Ms. Simpson saw that the fine was $169 and argued with Trooper Brame, saying that she was a single mother and could not afford the fine. The trooper responded that the judge might be able to help, but he did not want to argue and risk being hit by a car. He then wished her a safe day and began walking toward his patrol car.

After taking a few steps, Trooper Brame heard Ms. Simpson tearing up the citation. He turned around and saw her still shredding it.

Believing that Ms. Simpson did not intend to honor the citation, Trooper Brame decided to arrest her for the seatbelt offenses. He returned to her car and told her twice to get out of the car. She stayed inside, and he opened the car door and told her that he could take her to jail because the seatbelt violations were misdemeanors and she showed (by tearing up the citation) that she was not going to appear as required.

The trooper again asked Ms. Simpson to get out, but she did not. Trooper Brame pulled her from the vehicle and called for backup, stating

that she was resisting arrest. She repeatedly told him to leave, and he repeatedly told her to get out. The trooper then pulled her from the car, placed one hand on the back of her neck (while keeping his other hand firmly on her wrist), walked her to the back of her car, and firmly guided her to the ground.

After a moment, Trooper Brame realized that Ms. Simpson's car was rolling down the entrance ramp because she had not yet put the car in "park." He released her, moved to the driver's side of the car, and secured the car.

Ms. Simpson stood up and followed him. He told her to go to the rear of the car. He then grabbed her and pushed her to a grassy area behind her car. There, he held her hands behind her back, again calling for backup and stating that she was resisting arrest. According to Ms. Simpson, he shoved her to the ground, put his knee in her back, put his weight on her, handcuffed her, and pulled her to a standing position by the handcuffs.

Ms. Simpson repeatedly yelled at Trooper Brame while twisting and struggling in the handcuffs. In response, Trooper Brame pushed or held her on the hood of his police vehicle. Ms. Simpson claims Trooper Brame "repeatedly pulled up on [her] arms causing her great pain." Aplt. Opening Br. at 12. After backup arrived, Trooper Brame and another officer walked

- 4 -

Ms. Simpson to a patrol car while she kicked and screamed. She asserts that Trooper Brame threw her into the police vehicle.

Ms. Simpson was taken to jail, where she was booked and kept overnight. No charges were filed and she was released from custody the next day.

Ms. Simpson sued the trooper, claiming wrongful arrest, cruel and unusual punishment, false imprisonment, battery, intentional and negligent infliction of emotional distress, negligent training, and liability under the Kansas Tort Claims Act. The trooper moved for summary judgment, and the district court granted the motion.[1]

## II.    Review of the Trooper's Award of Summary Judgment

We agree with this ruling. The trooper had probable cause to arrest Ms. Simpson for a misdemeanor, and the videotape shows that the force used was objectively reasonable to make the arrest amidst heavy traffic on an entry to a busy highway.

---

[1]    Ms. Simpson also sued the State, and the district court granted summary judgment to the State based on Eleventh Amendment immunity. In this appeal, however, Ms. Simpson does not challenge the award of summary judgment to the State.

## A. Standard of Review

We engage in review of the summary judgment ruling based on the standards applicable in district court. *Fields v. City of Tulsa*, 753 F.3d 1000, 1008 (10th Cir. 2014), *petition for cert. filed* (U.S. Sept. 15, 2004) (No. 14-323). The award of summary judgment can be upheld only in the absence of a genuine issue of material fact. *Id.* at 1009. To determine whether a genuine issue of material fact existed, we view the evidence in the light most favorable to Ms. Simpson. *Id.*

## B. Fourth Amendment Claim

Under the Fourth Amendment, the trooper could make the arrest without a warrant only if he had probable cause to believe a criminal offense had been or was being committed. *Courtney v. Okla. ex rel. Dep't of Pub. Safety*, 722 F.3d 1216, 1225 (10th Cir. 2013). The existence of probable cause is gauged based on the facts known to Trooper Brame when he made the arrest. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). His subjective motivation is irrelevant. *Id.* at 153.

The arrest would have been permissible even though the crime was minor, punishable by a fine. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the

offender."); *see also Virginia v. Moore*, 553 U.S. 164, 171 (2008)

("[W]hen an officer has probable cause to believe a person committed even

a minor crime in his presence, the balancing of private and public interests

is not in doubt.").

Ms. Simpson does not question probable cause for the seatbelt

offenses. But she argues that

- the Kansas seatbelt laws are merely traffic infractions (not misdemeanors) and would not support a warrantless arrest, and

- Officer Brame could make an arrest only if he had "new" probable cause because he had already declined to make an arrest for the traffic infractions.

We reject both arguments.

### 1. Was the Arrest for a Misdemeanor Offense?

Our threshold issue is whether a minor crime (like a seatbelt

violation) constitutes a "misdemeanor" for Fourth Amendment purposes.

For this inquiry, we examine state law. *See, e.g.*, *Atwater*, 532 U.S. at 323.

Thus, we begin by examining the applicable Kansas statutes.[2]

Trooper Brame cited Ms. Simpson for violation of Kan. Stat. Ann.

§§ 8-2503 and 8-1344. Section 8-2503(a)(1) requires adults in a car to

---

[2]    Ms. Simpson's argument assumes that the Fourth Amendment
prohibits arrest for traffic infractions that are *not* considered
"misdemeanors." For the sake of argument, we can assume that
Ms. Simpson is correct.

wear a seatbelt; Section 8-1344 requires the use of a restraining system for children 13 or younger. Violation of either section can result in a fine. *See* Kan. Stat. Ann. §§ 8-2504(a), 8-1345(a).

Ms. Simpson contends that under Kansas law, violations of §§ 8-2503 and 8-1344 are non-misdemeanor "traffic infractions" that do not subject the violator to arrest. *See* Kan. Stat. Ann. § 22-2401(d) (providing that officers can make an arrest for a crime committed in their presence "except a traffic infraction or a cigarette or tobacco infraction"). She cites Kan. Stat. Ann. § 8-2116, which spells out the basis for distinguishing between traffic infractions and misdemeanors:

> (a)   Every person convicted of violating any of the sections listed in the uniform fine schedule in K.S.A. 8-2118 is guilty of a traffic infraction.
>
> (b)   Except where another penalty or class of misdemeanor is provided by statute, every person convicted of violating any provision of the uniform act regulating traffic on highways designated as a misdemeanor is guilty of a class C misdemeanor, except that upon a second such offense committed within one year after the date of the first such offense, upon conviction thereof, such person is guilty of a class B misdemeanor, and upon a third or subsequent such offense committed within one year after the first such offense, upon conviction thereof, such person is guilty of a class A misdemeanor.

Section 8-2116(a) defines a "traffic infraction" as the violation of "any of the sections listed in the uniform fine schedule in [Kan. Stat. Ann. §] 8-2118." But, Trooper Brame relied on statutory violations that are not

listed in § 8-2118. As a result, these offenses cannot constitute mere traffic infractions; they are misdemeanors.[3]

Ms. Simpson cites other language in § 8-2116(b). This section specifies that traffic misdemeanors are generally treated as "Class C misdemeanors." Kan. Stat. Ann. § 8-2116(b). Because the seatbelt offenses have their own penalty provisions involving fines, Ms. Simpson argues that the Kansas legislature intended to treat seat belt offenses as traffic infractions rather than misdemeanors. This argument distorts § 2116(b) and fails to account for another statutory provision (§ 21-5102).

Ms. Simpson's reading of § 2116(b) takes the statutory language out of context. Read in context, § 8-2116(b) refers to misdemeanors (not traffic infractions) that are subject to separate penalties set out elsewhere.

We also conclude that Ms. Simpson's argument fails to take into account another statutory provision, Kan. Stat. Ann. § 21-5102. That statute unambiguously provides that "[a] traffic infraction is a violation of

---

[3]     The Kansas Court of Appeals has endorsed the defendants' reading of this statute in dicta without explicitly resolving whether a violation of § 8-2503 or § 8-1344 is a misdemeanor. *See State v. Schmitter*, 933 P.2d 762, 769 (Kan. Ct. App. 1997) (noting but not resolving the merits of the state's argument that "because failure to wear a seat belt is not listed in . . . [§] 8-2118, it is not a traffic infraction and because it is not a felony, it must be a misdemeanor"); *see also State v. Beltran*, 300 P.3d 92, 110 (Kan. Ct. App. 2013) (approving the state's assertion in *Schmitter* that "the seat belt violation was a general misdemeanor . . . and would have supported an arrest of Schmitter").

any of the statutory provisions listed in [§ 8-2118(c)], and amendments thereto." *Id.* § 21-5102(b). No exception is made for seatbelt offenses, which do not appear in § 8-2118(c). After defining felonies and cigarette or tobacco infractions, § 21-5102(d) adds that "[a]ll other crimes are misdemeanors." The word "all" is unambiguous: It includes violation of §§ 8-2503 and 8-1344.

Kansas law regards Ms. Simpson's seatbelt offenses as misdemeanors. Thus, the arrest would not run afoul of the Fourth Amendment even if it prohibited arrest for mere traffic infractions. *See Moore*, 553 U.S. at 171; *Atwater*, 532 U.S. at 354.

### 2. Did Trooper Brame Lose Authority to Arrest Ms. Simpson by Issuing a Citation?

Ms. Simpson makes an alternative argument: Even if Trooper Brame initially had probable cause for an arrest, he lost probable cause to make or arrest for the seatbelt violations once he issued a citation. In Ms. Simpson's view, Trooper Brame needed "new" probable cause for the arrest. For this proposition, she cites a Kansas statutory provision pertaining to citations for misdemeanor traffic offenses. This provision states that

- a law enforcement officer has discretion to permit a violator to give a written promise to appear in court and

- when this occurs, "the law enforcement officer shall deliver a copy of the citation to the person *and shall not take the person into physical custody.*"

Kan. Stat. Ann. § 8-2106(e) (emphasis added).

Ms. Simpson is essentially making a state-law argument, assuming that a violation of Kansas law would render the arrest unconstitutional. This argument misconceives the nature of a Fourth Amendment violation and the state law.

The assumption is incorrect because a violation of state law does not typically create a Fourth Amendment violation. *See Moore*, 553 U.S. at 176 ("[W]hile States are free to regulate . . . arrests however they desire, state restrictions do not alter the Fourth Amendment's protections.").

Ms. Simpson's argument also distorts state law because it required her to sign the notice and the initial citation did not prevent a subsequent arrest. She cites this Kansas provision:

(e)   Except in the circumstances to which subsection (a) of K.S.A. 8-2104, and amendments thereto, apply, in the discretion of the law enforcement officer, a person charged with a misdemeanor   *may give written promise to appear in court by signing at least one copy of the written citation prepared by the law enforcement officer*, in which event the law enforcement officer shall deliver a copy of the citation to the person and shall not take the person into physical custody.

- 11 -

Kan. Stat. Ann. § 8-2106(e) (emphasis added). This law contemplates that the violator will make a written promise to appear by signing the written citation. But, Ms. Simpson admits that she did not sign the citation. Aplt. Opening Br. at 14. Instead, she ripped it up. Ms. Simpson cannot rely on a statutory right to avoid arrest by signing a document that she ripped up rather than sign. Thus, § 8-2106(e) did not require Trooper Brame to obtain new justification before arresting Ms. Simpson.

### 3. Did Trooper Brame Violate the Fourth Amendment Based on His Actual Motivation?

Ms. Simpson also argues that a genuine issue of material fact remains concerning Trooper Brame's motivation. She contends that "[Trooper] Brame clearly stated in his deposition that he arrested Olga Simpson for tearing up her ticket, which is clearly not an arrestable offense." Aplt. Opening Br. at 15. But Trooper Brame's motive does not affect the Fourth Amendment inquiry. *See Devenpeck*, 543 U.S. at 153 ("Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."). Probable cause existed to arrest Ms. Simpson for the seatbelt offense; thus, the trooper did not violate the Fourth Amendment even if he made the arrest just because Ms. Simpson had torn up her ticket.

## C.    Excessive Force

Ms. Simpson alleges excessive force, claiming that Office Brame "pulled her from the vehicle and ultimately threw her to the ground placing his knee in her back." Aplt. Opening Br. at 18. The district court properly awarded summary judgment to the trooper on this claim.

The reasonableness of the force ordinarily involves a factual question for the jury to decide. But here, most of the episode is captured on videotape. For the events occurring off-camera, we have assumed the truth of Ms. Simpson's version of events.

The disagreements do not involve what took place; instead, the parties disagree on whether the conduct involved excessive force. "The question of objective reasonableness is *not* for the jury to decide where the facts are uncontroverted." *Meacham v. Frazier*, 500 F.3d 1200, 1203 (10th Cir. 2007).

In determining whether the force was objectively reasonable, we consider the totality of circumstances. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1313 (10th Cir. 2009). These circumstances include the severity of the crime, the immediacy of a threat to one's safety, and a suspect's resistance to arrest or effort to flee. *Id.*

The misdemeanor offense was not a serious one. But the trooper had a clear need to quickly secure the arrest. He was on an entrance ramp to a

busy highway, and Ms. Simpson was resisting arrest. As the district court concluded, Trooper Brame "did not use excessive force but used that amount of force necessary to overcome [Ms. Simpson's] resistance and to keep her safe on the busy entrance ramp." Aplt. App. at 185. The videotape shows that the officer used only the level of force needed to make the arrest without danger to himself, Ms. Simpson, or the children.

We addressed similar circumstances in *Meacham v. Frazier*, 500 F.3d 1200 (10th Cir. 2007). There an officer pulled a driver over for speeding and failing to wear a seatbelt. *See Meacham*, 500 F.3d at 1202. During the stop, the driver took a phone call on her cellphone and refused to put the phone down. *See id.* The officer ordered the car towed and told the driver to get out. She refused to get out until her mother arrived. *See id.* at 1202. The officer sprayed the driver with pepper, removed her from the car, pulled her, and placed her on the ground. *See id.* at 1203. The episode was captured by video. *See id.* at 1202 n.2.

We held, as a matter of law, that the use of force was objectively reasonable.[4] In reaching this conclusion, we pointed to the driver's refusal

---

[4]    There the issue of objective reasonableness arose in connection with qualified immunity. *Meacham*, 500 F.3d at 1204. Though we are not addressing the trooper's assertion of qualified immunity, the issue of objective reasonableness applies equally here. The trooper's use of force would have violated the Fourth Amendment only if it was objectively unreasonable. *See* p. 13, above.

to comply with the trooper's instructions and the proximity to a busy highway. *Id.* at 1204-05.

Under *Meacham*, we must consider Trooper Brame's use of force objectively reasonable. Trooper Brame was confronting a similar refusal to comply with his instructions, proximity to a busy highway, and a driver who resisted arrest after being stopped for minor traffic infractions. In light of the similarity in circumstances, we follow our decision in *Meacham* and uphold the district court's grant of summary judgment on the claim involving excessive force.

### D.    Kansas Tort Act Claims

Ms. Simpson challenges the grant of summary judgment to Trooper Brame concerning her state-law claims for false imprisonment, battery, and intentional infliction of emotional distress. These challenges are rejected.

#### 1.    False Imprisonment

The district court granted summary judgment on the false imprisonment claim, holding that trooper Brame enjoyed immunity under the Kansas Tort Claims Act. We agree with this ruling.

The Kansas statute provides immunity for discretionary decisions. Kan. Stat. Ann. § 75-6104(e). Trooper Brame's decision to arrest Ms. Simpson was discretionary because it involved "personal deliberation, decision and judgment." *Soto v. City of Bonner Springs*, 238 P.3d 278, 287

(Kan. 2010) (internal quotation marks omitted). Thus, his decision to make the arrest involved immunity under Kansas law.

Ms. Simpson argues that Trooper Brame's actions fell outside the immunity because he acted without legal justification. We have already rejected this assertion in the context of the Fourth Amendment claim.

According to Ms. Simpson, Trooper Brame had no legal justification to use force to effectuate the arrest. She refers to various instances of the use of force, all of which she contends were unauthorized. In discussing the Fourth Amendment claim, we concluded that the trooper's use of force was reasonable. For the false-imprisonment claim, the test is again the reasonableness of the trooper's force. *See* Kan. Stat. Ann. § 21-5227(a) ("[An] officer is justified in the use of any force which such officer reasonably believes to be necessary to effect the arrest and the use of any force which such officer reasonably believes to be necessary to defend the officer's self or another from bodily harm while making the arrest."). For the reasons discussed earlier, we conclude that the force was reasonable as a matter of law.

Thus, the district court properly granted summary judgment to the trooper on the false-imprisonment claim.

## 2. Battery

The district court also granted the trooper summary judgment on the battery claim, reasoning in part that the use of force was privileged. Ms. Simpson has not meaningfully addressed this rationale. She states in a conclusory heading that the district court "erred in finding . . . that Appellee Brame's actions were reasonable." Aplt. Opening Br. at 22. But, she has not developed an argument for this heading. Aplt. App. at 192; *see* Aplt. Opening Br. at 22-23. Rather than address the deficiency in her evidence, Ms. Simpson focuses on the sufficiency of her complaint. *Id.* Based on that focus, we consider whether Ms. Simpson presented evidence concerning the trooper's allegation of privilege through the use of reasonable force. In discussing the battery claim, Ms. Simpson did not develop an argument on this issue. Thus, she waived the issue. *See Molina v. Holder*, 763 F.3d 1259, 1263 n.2 (10th Cir. 2014). In light of this waiver, we uphold the award of summary judgment to the trooper on the battery claim.

### 3. Intentional Infliction of Emotional Distress[5]

The district court also determined that Ms. Simpson could not create a fact-issue on a claim involving intentional infliction of emotional distress. We agree. This claim requires proof that the defendant's conduct was "extreme and outrageous," meaning that it "goes beyond the bounds of decency and is utterly intolerable in a civilized society." *Valadez v. Emmis Commc'ns*, 229 P.3d 389, 394 (Kan. 2010).

Ms. Simpson argues that Trooper Brame's conduct met this standard because once he issued a citation and left the vehicle, he could not make an arrest without evidence of a new criminal act. But, we have already rejected this assertion in our analysis of probable cause. Under the circumstances, Trooper Brame's decision to arrest Ms. Simpson fares no better as evidence of extreme and outrageous conduct.

She also argues that Trooper Brame's actions were "extreme and outrageous" because she had three small children in the car, the car was still in gear, and the children saw the entire episode. Aplt. Opening Br. at 24. We disagree. Trooper Brame's concern for the children's safety led to the traffic stop and issuance of a traffic citation. When the car began to

---

[5] In the complaint, Ms. Simpson included claims involving intentional infliction of emotional distress (for herself) and negligent infliction of emotional distress (for her children). The complaint was superseded by the final pretrial order, which omitted claims involving negligent infliction of emotional distress.

- 18 -

roll away, he helped to stop it. The actions the children witnessed were at least in part a function of Ms. Simpson's efforts to resist arrest, which required the additional use of force. The district court properly determined that the alleged facts did not rise to the level of extreme and outrageous conduct.

## III.  Sealing of the Record on Appeal

Ms. Simpson filed one volume of her appendix under seal. The court clerk's office provisionally permitted the filing, but ordered her to state why these portions of the appendix should remain under seal. We allowed part (but not all) of the appendix to remain under seal.

We have discretion to allow the sealing of documents if the public's right of access is outweighed by other interests. *Jetaway Aviation, LLC v. Bd. of Cnty. Comm'rs*, 754 F.3d 824, 826 (10th Cir. 2014) (per curiam). "To overcome [the] presumption against sealing, the party seeking to seal records must articulate a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process." *Id.* (internal quotation marks omitted).

Ms. Simpson requested the sealing because the district court determined that a protective order was proper. By itself, this is not an

adequate justification for filing the documents under seal. *Id.* But Ms. Simpson adds that "[t]he District Court found that sealing the documents was necessary to prevent the dissemination of confidential medical and personal information not otherwise subject to disclosure as well as law enforcement policies and procedures that are not known and should not be known to the general public." Statement for Filing Appendix Under Seal, at 1. The reference to "confidential medical and personal information not otherwise subject to disclosure" is too broad and conclusory to overcome the presumption against sealing. *Jetaway Aviation,* 754 F.3d at 827. The reference to "law enforcement policies and procedures that are not known and should not be known to the general public," however, justifies sealing of the written documents in Volume II.

This reason does not justify sealing of the DVD. The evidence depicted in the DVD is crucial to the parties' arguments and the outcome. With such reliance on the DVD, we have no justification for continuing to keep the DVD out of the public record. As a result, we order unsealing of the DVD.

**IV.   Conclusion**

The summary judgment ruling is affirmed.  The provisional filing of Volume II of Ms. Simpson's appendix under seal is vacated in part (as noted above).  The remainder of Volume II shall remain under seal.

Entered for the Court


Robert E. Bacharach
Circuit Judge