**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**April 2, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

DERRICK DUANE BARKER,

     Plaintiff - Appellant,

v.

CITY OF WEATHERFORD EX REL.
WEATHERFORD POLICE
DEPARTMENT; RYAN
HETHERINGTON; SEAN LANIER;
NORMANDO GUYTON; DYLAN
OWENS; DEREK BECK; CHASE
MURLEY; JUSTIN BLATNICK; HAGAN
ARD, in their individual capacities,

     Defendants - Appellees.

No. 25-6069
(D.C. No. 5:24-CV-00235-R)
(W.D. Okla.)

_____

### ORDER AND JUDGMENT[*]

_____

Before **HARTZ**, **KELLY**, and **TYMKOVICH**, Circuit Judges.

_____

Derrick Barker brought suit under 42 U.S.C. § 1983 alleging officers of the

City of Weatherford Police Department used excessive force while arresting him

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

following a traffic stop. Barker brought his civil rights claims against the City of Weatherford and the eight individual officers who took part in his arrest.

The officers asserted qualified immunity and moved for summary judgment. The district court granted their motion, finding Barker failed to show the officers violated a constitutional right, and even if they had, the constitutional right the officers allegedly violated was not clearly established. This appeal followed.

We **AFFIRM** because we agree with the district court on both prongs of the qualified immunity analysis.

## I.    Background[1]

On the evening of November 27th, 2021, Officer Hetherington observed Barker driving his vehicle in Weatherford, Oklahoma without his vehicle tag illuminated, and conducted a traffic stop. *See* Hetherington Dash at 00:39–00:44

---

[1] Barker disputes the district court's recitation of the facts. He argues the district court "relied on inaccurate facts" and "ignored material facts," although he concedes "[t]he district court correctly identifies the facts of the incident up until Mr. Barker is tased." Aplt. Br. at 10, 13–17. But because two separate dash cameras and three different officer body cameras captured the incident, we take "what is indisputably shown by the videos . . . as a matter of fact." *Kapinski v. City of Albuquerque*, 964 F.3d 900, 903 n.2 (10th Cir. 2020) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). And although under the summary judgment standard we view the facts in the light most favorable to Barker as the nonmoving party, *see* Fed. R. Civ. P. 56(c), we will not adopt a version of the facts that is "blatantly contradicted by the record, [such] that no reasonable jury could believe it," *Scott*, 550 U.S. at 380. After a careful analysis of the videos, we agree with the district court's characterization of the incident.

The Appellees submitted the dash and body camera videos as supplemental appendices 9–13. *See* Supp. App. 9 ("Hetherington Dash"); Supp. App. 10 ("Hetherington Body"); Supp. App. 11 ("Owens Dash"); Supp. App. 12 ("Owens Body"); Supp. App. 13 ("Guyton Body").

(Barker's vehicle tag not illuminated).  Barker parked his vehicle, stepped out of it while the engine was still running, and walked toward Hetherington's police cruiser. Hetherington instructed Barker to get back into his vehicle three times, but Barker did not comply.  Hetherington then radioed for backup.

Barker eventually returned to his vehicle and reached in to grab a cell phone. Heatherington approached Barker, again instructing him to get in his vehicle, and asked him why he got out of his vehicle.  Barker responded, "I just got out of the vehicle."  Hetherington Body at 00:57.  Barker then reached in his vehicle again, turned back toward Hetherington, and put his hand in his pocket.  Hetherington instructed Barker a fifth time to get in his vehicle.  In response, Barker slowly turned to his vehicle and spent several seconds rummaging inside it, before finally sitting in the driver's seat.

Hetherington informed Barker that he pulled him over because his license plate was not illuminated.  Without speaking, Barker exited his vehicle, and attempted to move past Hetherington toward the rear of the vehicle.  Hetherington placed his hand on Barker's chest, extended his arm, and instructed Barker to get back in his vehicle.  Barker did not comply, but instead raised his hand to point to the rear of the vehicle, stating he wanted to check his tag light.  Hetherington again instructed Barker to return to his vehicle, at which point Barker swiped Hetherington's hand away from his chest and yelled, "Get your hand off me!" Hetherington Body at 01:31–01:33.  Hetherington warned that he would arrest Barker

for obstruction if he did not comply. Barker still refused to comply and attempted to force his way around Hetherington.

Hetherington then informed Barker he was under arrest, grabbed Barker's arm, and commanded him to put his hands behind his back. Barker pulled his arm away and attempted to get back into his vehicle. Hetherington grabbed Barker's arm again, to which Barker exclaimed, "This has gone far enough," before pulling himself back into his vehicle. Hetherington Body at 01:49. During this struggle, Hetherington commanded Barker to put his hands behind his back at least four times, yet Barker never complied. Hetherington finally backed away and pulled out his taser.

While pointing his taser at Barker, Hetherington commanded him to exit his vehicle. Barker responded, "First you tell me to get in, now you want me to get out?" Hetherington Body at 02:13. Hetherington instructed Barker to exit his vehicle at least six times before Officer Lanier arrived, at which point Hetherington asked Lanier to "cover" Barker with his taser so Hetherington could remove Barker from the vehicle. *Id.* at 02:36–02:40. For about fifteen seconds, Hetherington tried to pull Barker from his vehicle, but Barker resisted by bracing himself and holding onto the steering wheel. *Id.* at 02:41–57; Hetherington Dash at 03:23–03:38. During that time, both officers continued to demand that Barker exit his vehicle and warned him he would be tased if he did not comply. After Lanier issued a final warning, Hetherington instructed Lanier to tase Barker.

Officers Owens and Guyton arrived just after Lanier tased Barker, to which Owens observed that Barker was "still fighting." Owens Body at 00:33; Guyton

4

Body at 00:33. Guyton ran to help Hetherington remove Barker from his still-running vehicle, while Owens deployed his baton. After being tased, Barker was still sitting upright, holding onto the steering wheel with his right hand, Owens Body at 00:44, and had both feet inside the vehicle, Owens Dash at 01:24; Guyton Body at 00:43. Hetherington and Guyton then extracted Barker from his vehicle. While the officers tried to pull Barker to the ground, Barker planted his feet and pushed himself back toward his vehicle. *Id.* at 00:45; Owens Dash at 01:30; Owens Body at 00:45. Guyton tried to sweep Barker's legs with his foot, and Owens struck Barker's right leg below the knee with his baton. *Id.* at 00:46; Hetherington Dash at 04:00–04:02; Owens Dash at 01:30–01:34. Yet Barker remained standing. *Id.* at 01:34. Owens then struck Barker's legs again below the knees while Guyton attempted another leg sweep; this time Barker fell to the ground. *Id.* at 01:35; Owens Body at 00:47; Guyton Body at 00:47. Owens wound up for a third baton strike, but stopped his swing when he saw Barker fall. Hetherington Dash at 04:03.

Barker landed on his right side with both hands out in front of him, before turning onto his stomach. Owens Body at 00:47–00:48. Hetherington and Guyton got on top of Barker and tried to pull his arms behind his back, but Barker resisted and placed his palms on the ground out to either side of his body. Owens Dash at 01:37; Hetherington Body at 03:26; Guyton Body at 00:57. After watching his colleagues struggle to secure Barker's hands for several seconds, Owens performed an x-bar pressure point maneuver on Barker's left shin. Owens Dash at 01:42; Owens Body at 00:54. Hetherington and Owens were then able to move Barker's

5

hands behind his back, at which point Owens stopped the x-bar maneuver and put his baton away. *Id.* at 01:03; Hetherington Body at 03:29; Owens Dash at 01:45–01:51; Hetherington Dash at 04:08–04:18. Hetherington then handcuffed Barker and arrested him.

## II.    Discussion

Barker contends that he has produced sufficient evidence for a jury to find that the officers deployed excessive force when they subdued him after tasing him for failing to exit his car.

We review a district court's grant of summary judgment on qualified immunity grounds de novo. *Kapinski*, 964 F.3d at 904. But "our review of summary judgment orders in the qualified immunity context differs from that applicable to . . . other summary judgment decisions" because "[q]ualified immunity is intended to give officials 'breathing room to make reasonable but mistaken judgments.'" *Id.* (quoting *Stanton v. Sims*, 571 U.S. 3, 6 (2013)). Accordingly, when a public official asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to demonstrate: (1) the official violated a constitutional right; and (2) the right was clearly established at the time of the official's alleged violation. *Id.* at 905.

### A.    Constitutional Violation

The Fourth Amendment protects individuals against unreasonable seizures, which bars government officials from using "excessive force" to effect an arrest. *Graham v. Connor*, 490 U.S. 386, 396 (1989). To analyze a claim of excessive force, we determine "whether the officers' actions are 'objectively reasonable' in light of

the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. This analysis requires us to judge the use of force from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Because "police officers are often forced to make split-second judgments" under stressful and dangerous conditions, the Supreme Court has cautioned that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Id.* (internal citation and quotation marks omitted). With these considerations in mind, we look to the following *Graham* factors to assess the reasonableness of the officers' use of force: (1) the crime's severity; (2) the potential threat posed by the suspect to the officers' safety and the public; and (3) whether the suspect was resisting arrest or attempting to flee. *Helvie v. Jenkins*, 66 F.4th 1227, 1237 (10th Cir. 2023) (citing *Graham*, 490 U.S. at 396).

Barker admits on appeal that the officers *initially* tasing him was "arguably [] reasonable" because it was only "minimal force." Aplt. Br. at 20–21. But Barker argues the officers' *subsequent* use of force was unreasonable because he was effectively subdued by the tasing. The post-tasing force that Barker alleges was excessive includes Hetherington and Guyton removing Barker from his vehicle and pulling him to the ground, Owens striking Barker twice on the shins with a baton, and Owens performing the x-bar maneuver on his left leg.[2] After reviewing the videos,

---

[2] An x-bar maneuver is a pain compliance technique where the officer uses his baton as leverage to apply pressure to sensitive body areas—here, Barker's shin—so

and considering the circumstances confronting the officers, we conclude all three *Graham* factors justify the level of force the officers used to arrest Barker.

The first factor, the severity of the crime at issue, might have weighed against the use of force had the incident remained a routine encounter for a traffic violation. Barker, however, "quickly escalated the situation" by refusing to comply with Hetherington's many legitimate commands, which resulted in Hetherington trying to arrest Barker for obstruction. *Helvie*, 66 F.4th at 1241. The officers were thus justified using "additional force to overcome [Barker's] resistance to being removed from his" vehicle. *Id.* As a result, the crimes at issue that required the officers' use of force, including obstruction and resisting arrest (and arguably attempting escape from an officer)—are severe crimes that we have found to justify similar force in previous cases. *See id.* at 1233–34, 1241 (finding officer was justified in dragging the plaintiff from his car and dropping a knee on his chest—resulting in two fractured ribs—because the plaintiff obstructed the officer and resisted arrest). This factor accordingly favors the officers.

The second *Graham* factor, whether Barker posed an immediate threat to the safety of the officers or the public, also favors the officers. Barker's behavior from the start of the traffic stop was unusual, when he immediately exited his vehicle and

---

the officer may gain control over an active resister. Barker also alleges that while he was on the ground someone punched his body two times. Aplt. Br. at 7. He admits, however, that the punches are "not clear" in the videos. *Id.* From our review of the five videos, which cover multiple angles, we see nothing to indicate that any of the officers punched Barker.

walked toward Hetherington.[3]  Barker's unusual behavior quickly turned

confrontational when he refused to comply with Hetherington's orders and repeatedly

reached into his vehicle and pants pocket.  Additionally, throughout the incident,

Barker left his car running and his "path was not blocked by any police car."  *Helvie*,

66 F.4th at 1241.  An objective officer in Hetherington's situation might reasonably

have suspected Barker was perhaps "driving while impaired, thus presenting a

possible danger to the public if he were to flee and also suggesting that [Barker]

might have been acting with impaired judgment which might lead him to try to flee."

*Id.*; *see also Mecham v. Frazier*, 500 F.3d 1200, 1205 (10th Cir. 2007) ("An officer

could reasonably be concerned that Mecham might create a danger to herself or

others if not first subdued" when "she had her keys and [was in] control of the car

while refusing to cooperate.").  And even after Lanier tased Barker, potentially

neutralizing any safety concerns about his potential flight, Barker remained a threat

to the officers.  The officers had no way of knowing whether Barker was armed, and

his arms and legs remained unsecured inside the car.  Considering these facts, the

second factor justifies the officers' use of force after tasing Barker.  *See id.* ("With

the benefit of hindsight, one might have hoped for a different resolution," but "[i]n

---

[3] Barker argues this behavior was not unusual or aggressive because "other officers knew" Hetherington's usual practice during a traffic stop was to have people exit their vehicle and approach his car.  Aplt. Br. at 8.  But even if true, that does not explain why Barker exited his vehicle before Hetherington ordered him to do so.  Also, when Hetherington pulled Barker over, Barker stated that he did not get pulled over often, *see* Hetherington Body at 01:04; so it is unlikely Barker was accustomed to Hetherington's alleged usual practice.

making an arrest, officers may inevitably 'use some degree of physical coercion or threat thereof to effect it.'" (quoting *Graham*, 490 U.S. at 396)).

The final factor, whether Barker actively resisted arrest, similarly justifies the officers' post-tasing use of force. The crux of Barker's argument is that he was "physically incapacitated after being tased" and thus incapable of resisting arrest. Aplt. Br. at 16. He argues that at the very least, whether he was effectively subdued by the tasing is a dispute of material fact a jury should decide. The video evidence, however, shows otherwise; we do not credit his version of events that the record contradicts. *Scott*, 550 U.S. at 372.

*First*, Barker argues his "body went horizontal" after Lanier tased him and that "he was no longer in control of his body." Aplt. Br. at 5. But the videos show that after Lanier tased him, Barker was still sitting upright and holding onto the steering wheel with his right hand before Hetherington and Guyton pulled him from the vehicle.



Owens Body at 00:44.  The officers were therefore justified in using force to remove

Barker from the vehicle.  *See Valencia v. De Luca*, 612 F. App'x 512, 518–19

(10th Cir. 2015) (upholding officers' conduct in "pulling on" a driver to get him out

of his vehicle by "using pressure points, and twisting his wrist and arm," when the

driver was actively resisting arrest by "bracing his legs against the floorboard and

grabbing onto the steering wheel").[4]

 *Second*, Barker argues a jury could conclude he was incapacitated because he

was "unable to stand on his own" after the tasing.  Aplt. Br. at 16.  The videos,

however, show that after Hetherington and Guyton pulled Barker from his vehicle, he

stood on his legs, pushed his body back toward his vehicle, and resisted the officers'

---

[4] Barker argues the district court's citation to *Valencia* and *Simpson v. Kansas*, *see infra*, was improper because they are unpublished cases.  The district court cited those cases, as we do here as well, as illustrative factually analogous cases for its *Graham* analysis under the first prong of qualified immunity.

11

attempts to pull him to the ground.  Barker alleges the officers were holding him up, yet the videos show the opposite—the officers tried to get him on the ground by sweeping his legs and pulling him down.



Owens Dash at 01:34.

*Third*, Barker claims he was not resisting the officers' attempts to move his hands behind his back, but instead, the officers could not secure his hands because they were pinned beneath his incapacitated body.  But again, the videos contradict Barker's story.  While on the ground, Barker's hands were out to either side of his body and the officers only successfully secured his hands after Owens performed the x-bar maneuver.



Owens Dash at 01:42.

At bottom, the video evidence shows Barker was not incapacitated after Lanier tased him. We thus agree with the district court that Barker was still actively resisting arrest and the officers' subsequent use of physical force was reasonable under the third *Graham* factor. *See Mecham*, 500 F.3d at 1206 ("The pepper spray here was used to subdue and remove an uncooperative and unresponsive, belligerent traffic violator from the car she still controlled, not to further incapacitate an already subdued suspect."); *Simpson v. Kansas*, 593 F. App'x 790, 796–97 (10th Cir. 2014) (upholding officer's use of force to remove an uncooperative motorist, which included pulling motorist from her vehicle, throwing her on the ground, and putting a knee to her back); *Zorn v. Linton*, 607 U.S. ___, 2026 WL 795469, at *3 (2026) (per curiam) (Officer's use of a "rear-wristlock" "pain compliance technique[]" "to move a noncompliant protester after repeated warnings" was not a clearly established violation of the Fourth Amendment.).

Because all three *Graham* factors support the officers, the district court correctly concluded Barker could not establish a constitutional violation. For that reason, Barker has not established the officers violated the Fourth Amendment, and thus he cannot overcome qualified immunity.

## B.  Clearly Established

Even if a jury could conclude the officers used excessive force, Barker cannot show the officers violated a clearly established constitutional right. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (internal quotation marks omitted). "A right is clearly established when it is sufficiently clear that *every reasonable official* would have understood that what he is doing violates that right." *Id.* (internal quotation marks omitted) (emphasis added). Although this standard "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam) (internal quotation marks omitted). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks omitted).

When looking for analogous existing precedent, we must be careful "not to define clearly established law at a high level of generality." *Id.* (internal quotation marks omitted).

> Specificity is especially important in the Fourth Amendment context . . . . Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue.

*Id.* (internal citation and quotation marks omitted).

Barker cites this court's opinion in *McCoy v. Meyers* and alleges the officers violated his "clearly established right to be free from the continued use of force after he was effectively subdued." 887 F.3d 1034, 1048 (10th Cir. 2018). Barker argues he was effectively subdued because Lanier tased him which caused Barker to no longer be in control of his body. But Barker's conclusory statement that he was "effectively subdued" under *McCoy* defines the right at too high a level of generality. *See Zorn*, 607 U.S. ___, 2026 WL 795469, at *2 ("Principles stated generally, such as that 'an officer may not use unreasonable and excessive force,' do not suffice." (quoting *Kisela*, 584 U.S. at 105)). Rather, we must determine whether *McCoy*, or the precedents it relied on, make clear that *every* reasonable officer would have known—under the *specific facts here*—that Barker was effectively subdued by the tasing. *See Rivas-Villegas*, 595 U.S. at 5; *Kisela*, 584 U.S. at 104.

As we outlined previously in our analysis of the third *Graham* factor, the videos show that after Lanier tased him, Barker was still conscious, sitting upright, and holding on to the steering wheel in his car. After Hetherington and Guyton removed him from his vehicle, the videos show Barker stood on his feet and resisted the officers' efforts to pull him down. The videos further show that before Owens used the x-bar maneuver, Barker's arms and legs were unrestrained and that he was

15

resisting the officers' efforts to secure his hands behind his back. None of the cases Barker relies on squarely govern these facts. *See id.*

In *McCoy*, this court found the plaintiff was effectively subdued because he was "rendered unconscious, handcuffed, and zip-tied." 887 F.3d at 1050. Barker, however, argues he was subdued despite being fully conscious, unrestrained, and still able to resist the officers. And the precedents *McCoy* relied on to find the right was clearly established are similarly distinguishable from Barker's case. *See Dixon v. Richer*, 922 F.2d 1456, 1463 (10th Cir. 1991) (Plaintiff subdued because "he had already been frisked, had his hands up against the van with his back to the officers, and was not making any aggressive moves or threats."); *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1282 (10th Cir. 2007) (Plaintiff subdued because he was "not violent" and the officer never warned him he was under arrest.); *Weigel v. Broad*, 544 F.3d 1143, 1152–53 (10th Cir. 2008) (Decedent subdued because he "was handcuffed and his legs were bound . . . ."). It is accordingly *not* beyond debate that Barker was effectively subdued when the officers used force against him after the tasing. *See Kisela*, 584 U.S. at 104; *see also Mecham*, 500 F.3d at 1206 ("While the facts of the cases compared need not be identical, they must be sufficiently analogous to satisfy the particularized context necessary to support liability." (internal citation omitted)).

In sum, even if we concluded the officers used unreasonable force against Barker, any such constitutional violation was not clearly established at the time of the incident. The officers are thus also entitled to qualified immunity under this prong.

### III.   Conclusion

The officers are entitled to qualified immunity because Barker failed to show both that they violated a constitutional right, and that any such right was clearly established.  Barker's remaining failure-to-intervene and *Monell* claims also fail because there is no underlying constitutional violation.  *See Trigalet v. City of Tulsa*, 239 F.3d 1150, 1155–56 (10th Cir. 2001).

We therefore affirm the district court's grant of summary judgment to the officers and the City.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge